## ANTHONY BARLAGE, JR. v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

*Condemnation of lands belonging to decedent's estate—Payment of award—Executor's responsibility.*

1. Possession of real estate could, under the law of 1846 (Rev. Stat. 288, § 7), be held by an executrix, and was in the right of heirs and devisees; and the executrix could resist possessory suits therefor without joining the heirs as defendants.

2. An award paid to an executrix upon the condemnation of land belonging to the estate, would be sustained, under the law of 1846, as paid not only for her personal interest, but for those which she represented as executrix.

3. The appearance of the executrix alone as respondent in condemnation proceedings against the estate, was *held* to give jurisdiction where the estate was in solido and was still in administration; the rights of heirs and devisees would be secured by her personal liability and that of her sureties.

4. Where a widow as executrix receives money belonging to the estate it is presumed that she accounts for it, and if she does, the heirs, in receiving it, waive all errors. And it is the same in legal effect if the heirs do not receive the money specifically awarded to them but on final settlement are paid their shares. After a great lapse of time, *e. g.* 30 years, it is presumed that full settlement was made.

Error to the Superior Court of Detroit. (Chipman, J.) June 24.—September 23.

EJECTMENT. Defendant brings error. Affirmed.

*W. H. Russell* and *Geo. Jerome* for appellant. The record of condemnation proceedings in accordance with statute, is a sufficient defense to ejectment for the premises: *Coon v. Fry* 6 Mich. 506; *Howard v. Moore* 2 Mich. 226; *Smith v. Milton School Dist.* 40 Mich. 144; if the court acted within its jurisdiction its proceedings are presumed regular; and after a great lapse of time its jurisdiction cannot be collaterally attacked: *Grignon v. Astor* 2 How. 339; *Sheldon v. Newton* 3 Ohio St. 494; *Thompson v. Tolmie* 2 Pet. 165; *United States v. Arredondo* 6 Pet. 729; *Telford v. Barney* 1 Greene (Ia.) 581; *Hannibal &c., R. R. Co. v. Morton* 27

Mo. 317; *Wagers v. Dickey* 17 Ohio 439; *Coil v. Willis* 18 Ohio 30; 1 Greenl. Ev. § 19; the award need not be apportioned among the parties in interest: *E. Sag. & St. Clair R. R. Co. v. Benham* 28 Mich. 459; *Mich. Air Line Ry. v. Barnes* 44 Mich. 222.

*Conely, Maybury & Lucking* for appellee.

COOLEY, C. J.  The plaintiff, by conveyances from the heirs of Joseph Ellair, who died in 1846, has become the owner in fee-simple of a strip of land thirty feet in width, from the southerly end of lot eleven south of Franklin street, on the Louis Moran farm in the city of Detroit, unless the proceedings to appropriate the same for the purposes of the Detroit & Pontiac Railroad Company, taken in the year 1851, were effectual, which the plaintiff denies.  The facts in the case are for the most part agreed upon by the parties, and they appear to be the following :

Joseph Ellair was the owner of the land in fee-simple at the time of his decease.  He left a will, which was duly probated in Wayne county, Michigan, by which he devised the land to his widow, Marie Florence Ellair, for life, with remainder to his ten children.  The widow was made executrix of the will, and qualified and acted as such.  She died in 1881.  The railroad company, on May 5, 1851, presented its petition to Charles Peltier, Esq., a justice of the peace for the county of Wayne, setting forth that in making a proposed extension of their road it was necessary to construct it over the lands in question; that the owners of said lands, as petitioner was informed and believed, were said Marie Ellair, for life, and Peter N. Ellair, Charles Ellair, Eli Ellair, Francis Ellair, Josette Ellair, Flora Ellair, Flavia Ellair, Theresa Ellair, Emily Rivard, wife of John B. Rivard, and Archange Fraser, wife of Claude Fraser, of the reversion, the two last being femes covert, and that petitioner could not agree with said owners for the purchase or occupation of said lands.  The petitioner therefore prayed that a jury be summoned to value the damages which the owners would sustain by the use and occupation of said land by petitioner for its railroad.

The persons here named as owners of the reversion were the heirs at law of Joseph Ellair, and it now appears that Flavia, Eli, Francis and Theresa were at that time under the age of twenty-one years ; that Emily Rivard had deceased, leaving an infant heir ; and that Josette Ellair had been married, and had also died, leaving an infant heir. These infant heirs of Emily and Josette were not taken notice of in the proceedings, nor was the infancy of Flavia, Eli, Francis and Theresa mentioned. ·Justice Peltier issued his warrant for the summoning of a jury as prayed, and eighteen persons were summoned to convene May 12, 1851. Notice of the convening of the jury was issued, addressed to all the persons named in the petition, but it does not appear to have been served upon any one but the widow. On May 12th the persons summoned came together at the office of the justice, and James A. Van Dyke, a member of the Detroit bar, appeared for the estate of Joseph Ellair. Six names were struck from the panel, as required by law, and the twelve whose names remained proceeded to assess the damages. The following is a copy of their finding :

"*State of Michigan, County of Wayne, ss.:* We, the undersigned jurors, duly summoned and sworn under 'An act to incorporate the Detroit & Pontiac Railroad Company,' approved March 7, 1834, and 'An act authorizing a connection between the Detroit & Pontiac and Oakland & Ottawa Railroads, and for other purposes,' approved March 20, 1850, justly and impartially to value the damages which the owner or owners will sustain by reason of the use and occupation by the Detroit & Pontiac Railroad Company of the following described premises [describing them], and being freeholders of the county of Wayne and not in any way interested in the matter aforesaid, nor related to the parties in interest ; having met upon said premises this day at one o'clock P. M., and examined the same, do find upon our oaths that the damages which the owner or owners thereof will sustain by reason of the use and occupation of said premises by said Detroit & Pontiac Railroad Company for the purpose aforesaid, is the sum of four hundred dollars. In testimony whereof we have hereto set our hands and seals this 12th day of May, in the year of our Lord one thousand eight hundred and fifty-one." [Signed by the twelve jurors.]

The petition, the summons, the sheriff's return of service and the finding of the jury were filed in the circuit court for the county of Wayne, and that court entered an order confirming the finding. It does not appear that any notice of this proceeding in the circuit court was given to the parties interested in the estate of Joseph Ellair, but after the order of confirmation payment of the four hundred dollars was made to the widow, and she executed and delivered to the railroad company a receipt, of which a copy is given in the margin.[1] There is some evidence that no part of the four hundred dollars mentioned in the receipt was at the time paid over to the heirs, and whether the widow accounted for any part thereof in the settlement of her account as executrix was not shown.

This suit is ejectment, begun after the death of the widow in 1881. The Superior Court sustained the condemnation proceedings, and the defendant had judgment.

The proceedings were taken under section twelve of the charter of the railroad company (Sess. L. 1834, pp. 40, 44: 3 Terr. L. 1289), and the plaintiff insists that they were void for the following reasons:

1. Two of the owners were not named or in any way noticed in the proceedings.

---

[1] DETROIT, September 10th, 1851.

Whereas, under the charter of the Detroit & Pontiac Railroad Company, and the acts amendatory thereto, a jury has assessed the damages for the use and occupation by said company of the rear part, being a strip of land thirty feet wide across the rear of lot number 11, south of Franklin street, on the Louis Moran farm, so called, in the city of Detroit, formerly and during his life-time the property of Joseph Ellair, now deceased, at the sum of four hundred dollars; and whereas, said inquisition has been confirmed by the circuit court for the county of Wayne, and said sum of money has been paid to me accordingly: I, Marie Ellair, widow and devisee and executrix of the will of said Joseph, do hereby acknowledge that I have received the said sum of money so assessed as aforesaid, from the said Detroit & Pontiac Railroad Company, to be disposed of according to the terms of the said will, and in full payment for the aforesaid use and occupation of said premises, and do hereby authorize and empower the said company to assume the possession thereof. Received also twenty-five dollars.

In presence of
   SAMUEL E PITTMAN.
The above is right.
   J. A. VAN DYKE.

                her
MARIE X ELLAIR.   [L. S.]
       mark.

2. There was no service of notice on any party concerned, except the owner of the life-estate.

3. No guardians ad litem were appointed for any of the infant owners.

4. No apportionment of the sum awarded was made between the widow and the several heirs. This, it is claimed, was essential.

5. All the money awarded was paid to the widow for her life-estate simply.

6. Under the Constitution of 1850, adopted before these proceedings were taken, it was required that the jury pass upon the necessity for the taking of the land; and no such question was submitted to them, nor was there any such finding.

The railroad company, on the other hand, contends that the confirmation of the inquisition by the circuit court is final and conclusive. It contains, it is said, all that the statute requires, and the court therefore had jurisdiction, and its proceedings are not to be attacked collaterally.

What is requisite to give the circuit court jurisdiction is not made very plain by the statute. All that it says upon the subject is that "said jury shall reduce their inquisition into writing, and shall sign and seal the same, and it shall then be sent to the clerk of the circuit court of said county, and by said clerk filed in his office, and shall be confirmed by said court at its next session, if no sufficient cause to the contrary is shown; and when confirmed the same shall be recorded by said clerk, at the expense of said company; but if set aside, said court may direct another inquisition to be taken in the manner above prescribed." Nothing is here said about notice to the parties; but if all parties concerned had notice of the proceedings taken before and by the jury, the statute itself would be notice that the inquisition would stand for confirmation at the next term of the circuit court. But obviously no one would be constructively notified of the proceedings in the circuit court unless he had had actual notice to appear at the inquisition; and in this case there was no attempt to show that any one but the widow had such notice. The question

then is whether notice to her and payment to her of the damages assessed was sufficient.

The widow had a life-estate in the land under the will, and she was also executrix. By the statute then in force it was provided that "the executor or administrator shall have a right to the possession of all the real as well as personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over by order of the probate court to the heirs or devisees, and shall keep in good tenantable repair all houses, buildings and fences thereon which are under his control." Rev. St. 1846, p. 288, § 7. The possession by the executrix under this statute would be in the right of and as representing the heirs or devisees, and she might undoubtedly bring or defend possessory suits without the heirs being joined. *Whitford v. Crooks* ante p. 261.

It does not appear in this case that the estate had been settled, and the contrary is inferable. It affirmatively appears that the executrix assumed to represent the estate in the proceedings; that able and reputable counsel appeared, not for her as life-tenant, but for the estate ; and the sum awarded in gross must be deemed awarded to the estate. The receipt which was given for it was given as " widow and devisee and executrix," and clearly shows an understanding that the sum paid had been awarded, not merely for the interest of Mrs. Ellair, but for the interests she represented as executrix also. Upon this subject there is no room for doubt; and when Mr. Van Dyke certified that " this is right," he must be understood as approving of the appearance of the executrix for all concerned, and of her receipt for all of the compensation awarded.

It cannot be held, we think, that these proceedings were without jurisdiction. The estate was then in solido, and represented by the party who appeared. Other persons would have interests assigned to them in it when her administration was closed; but many things, in the meantime, might be done which would affect their interests, and possibly, in the course of administration, the lands might be con-

verted into money, and exhausted in the payment of debts. The security of the heirs and devisees that their rights would be protected, must in such cases be found in the personal liability of the executrix and her sureties; and presumptively this is ample. That security the parties concerned had in this case.

The widow received the money for the estate, and it must be presumed she duly accounted for it. If she did, the heirs in receiving the moneys waived all errors. *Embury v. Conner* 3 N. Y. 511. The fact that none of the heirs received a part of the money as money specifically awarded to them is of no moment: if it was accounted for in the final settlement, and they received their shares in the estate at that time, it was the same, in legal effect, as if they had received their proportions of this specific money before. And it must be assumed, especially after this lapse of time, that due and full settlement was made. The youngest of the heirs appears to have been ten years of age in 1851, and must therefore have attained his majority in 1862, fully twenty years before this suit was instituted. If he had never been settled with for these moneys, he might at any time before his rights against her were barred by lapse of time, have called upon the executrix to account; and as the land had been fully paid for by the railroad company, this was what justice demanded, instead of the course now adopted. But, as has been said, the presumption must be that an accounting and settlement were had.

No error appears, and the judgment must be affirmed.

SHERWOOD and CHAMPLIN, JJ. concurred, CAMPBELL, J. not sitting.