(Clark County, O., Probate Court.)

WILLIAM GILBERT v. JASPER N. MARSH.

---

*Citation, when barred by lapse of time—*
1. A motion for citation and attachment proceedings against an administrator will lie under secs. 6178 and 6040, until more

than ten years have elapsed from the date of hearing of the last account filed by such administrator.

*Account, when final—*

2. An account is not final so long as there are assets in the hands of the administrator yet to be administered upon, and not accounted for.

*Citation, when cannot be issued—*

3. A citation cannot be issued between the time of the filing and the hearing of an account, nor before the expiration of eighteen months from the date of the administrator's appointment.

Citation to file account.

ROCKEL, J.

The facts in this case are as follows:

In July, 1879, Jasper N. Marsh, the defendant, was appointed and qualified as administrator of the estate of Elizabeth Gilbert, deceased. On August 6, 1879, he filed his inventory in this court, and therein returned "Moneys belonging to the deceased, $179.00." On March 2, 1881, he filed his first final account. In this account he does not charge himself with this $179.00, nor does he make any reference to it whatever, so as to show what became of it.

On May 21, 1881, this account was passed upon by the court and he was ordered to distribute the balance in his hands to the persons entitled thereto.

On the same day he filed an account of final distribution, and was discharged of his trust. Nothing more appears in the case until the 14th day of May, 1891, when the plaintiff, one of the heirs at law of Elizabeth Gilbert, filed his application for a citation to issue against said Jasper N. Marsh, to compel him to "return and file a true account of his administration of said estate of Elizabeth Gilbert, deceased, according to law." Citation was issued, and the administrator was ordered to appear on June 14th, 1891. to show cause why an attachment should not issue against him.

The administrator now pleads he is not required to account further, and that no attachment should issue against him because the same, by reason of the great length of time since he filed his first and final account, is barred by the statute of limitations.

Such proceeding is not an action of law within the purview of the statute of limitations, but is a simple proceeding in the court of probate, usually preparatory to a suit on the administration bond. But while it may be said that it is usually preparatory to the commencement of a suit on the administartion bond, yet it is not necessarily for that purpose. And the reason given therefore, in Phillips v. Harter, 5 Ohio St., 124, "that the lapse of time, after the default of an administrator in filing his settlement accounts, which is sufficient to bar an action on the administration bond, or to amount to a defense in equity, against a proceeding for a discovery and accounting, will constitute a sufficient defense against any

such proceeding by citation or attachment," may not apply in all cases. But it is perhaps the best guide in Ohio.

Sec. 6178, Rev. Stats., provides: "If any executor or administrator shall fail to render his accounts as hereinbefore directed, he may be compelled to do so, as in case of failing to file an inventory. * * *."

Sec. 6047, provides: If any executor or administrator shall neglect or refuse to return such inventory within three months after his appointment, the probate court shall issue an order requiring such executor or administrator at a short day therein named to return an inventory according to law, or show cause before the court why an attachment should not issue against him."

These are the only statutes that relate to the proceedings of citation.

Nothing in them to indicate that the proceeding would at any item be barred by lapse of time. Sec. 6175 would also seem to imply that the proceeding would not be barred so long as there are assets in the hands of the administrator which are not accounted for. This section reads as follows:

"Every executor or administrator shall within eighteen months after his appointment render his account of his administration upon oath, and he shall in like manner render such further accounts of his administration and every twelve months thereafter, and also at such other times as may be required by the court, until the estate is wholly settled."

And it has been frequently held that the mere fact that the administrator has filed what purported to be a final account, did not release him if there were assets in his hands unaccounted for. In McAfee v. Phillip, 25 Ohio St., the supreme court says: "It is apparent that an estate cannot be finally settled until the whole estate administered has been fully accounted for, and passed upon by the probate court, and that for the purpose of accomplishing that object the executor or administrator may at any time after the period for rendering his first account has elapsed, and before the proceeding is barred by the statute of limittaion, be required to render an account for any portion of the estate remaining in his hands, not included in any former account rendered, notwithstanding the fact that the former account has been passed upon and settled by the court " Here the court say that the statute of limitations may apply to the proceedings, but do not inform us what the time may be.

We are thus led to believe that there must be a period of time, the elapse of which will bar a proceeding in citation upon an administrator to account for the assets in his hands remaining unaccounted for. In the absence of anything more conclusive, this period may be determined as suggested in Phillips v. Harter, 50 Ohio St., 124. That is, that the time in which a suit on the administration bond can be brought, or that a bill in equity for discovery and account can be maintained, this, in either case, is

[COPYRIGHT, 1897, BY CARL G. JAHN.]

by secs. 4894 and 4985 the same, viz: Ten years from the time the action accrues.

The administrator contends that the cause of action accrued at the time he filed his account and not at the time the account was passed upon. Until in January, 1881, the expiration of eighteen months from the time of his appointment, no citation could have issued, nor could any suit have been brought on the bond except by leave of court. From January until March 24, 1881, when he filed his account, a citation * * * might have been issued. But after March 24, 1881, until May 21, 1881, when his account was heard and passed upon, neither citation could have been issued, nor suit brought upon the bond, nor could a bill of discovery and account in equity have been brought.

The proper proceeding within that period of time would have been an exception to the account. But at any time after May 21, 1881, a citation could have issued to compel him to account for this $179.00.

It seems that under the statute there are but two ways in which an heir can bring suit on the bond. One is under sec. 6211, when he may bring suit after the court has made an order ascertaining the amount due him. This was never done in this case as to this $179.00. The amount ordered distributed, was distributed, and no action would have or could have been maintained by the heirs in this case under this section. What the heir would be required to do would be to have the court first ascertain what was due him. This he could do by citation to the administrator to file his account. It is true that a citation to file an account might have been issued during the time between the date of the expiration of the eighteen months from his appointment January 9, 1881, and March 24, 1881, when his account was filed. When that account was filed, until it was passed upon, on May 21, 1881, surely no citation to file an account could issue, for there was then in court his account for adjudication. Otherwise, we would have the strange anomaly of having two accounts for the same estate pending at the same time. This is surely not the intention of the law. The earliest time then when the heir in this case could have proceeded, after the interregnum of January 9, to March 24, in this court, to have gotten the matter in shape, that as distributee under sec. 6211 he could have brought an action on the bond, was May 21, 1881.

The other method that the heir would have been required to pursue, in order to bring an action on the bond, is by leave of court under sec. 6212. This section provides:—"When it shall appear to the probate court, on the representation of any person interested in the estate of any deceased testator or intestate that the executor or administrator has failed to perform his duty, in any other particular than those specified in the two preceding sections, the court may authorize any creditor, next of kin, legatee or other person aggrieved by such mal administration, to bring suit on the bond."

The duties referred to in the two preceding sections, are under sec. 6210, the failure to pay the admitted claim or judgment of creditors, etc., and under sec. 6211, already hereinbefore referred to, the sum found due to an heir or legatee, etc. Of course, it must be made to appear to the court that some breach has accrued, that the administrator has failed to perform some required duty, before this permission will be granted. Although we cannot say what a court will do, in a case until the case is presented, yet it is very probable that in the present case, if this application for permission to sue had been asked, and it could not have been asked until the account was filed, for until that time, no one knew that the defendant would not account for this $179.00 in his account, and I am sure that after the account was filed until its hearing on May 21, 1881 this permission would not have been granted, the court could very properly have said there is now no cause for this extraordinary proceeding of a suit on the bond.

File your exceptions to the account and let us first see, if the administrator has not accounted for everything that came into his hands as such, before you annoy him and his bondmsen by a suit on this alleged mal administration.

In fact, in this case no such permission er was granted, and until it was granted, at least the time in which it could have been granted has elapsed, it cannot be said that an action on the bond is barred under sec. 6212.

It seems to me that the proper time for the beginning of the running of the statute in this case was on May 21, 1881, when the administrator's account was heard and passed upon, and when he renounced his trust. And it seems to me that this is not a harsh or unjust construction against the administrator, but rather one in his favor. He was a trustee, and with a strict ruling it might be held that the statute would never run in a case like this. In other states where a limitation has been allowed it is much more than ten years. "If a long time has passed by" says Woerner in his able work on Administration, p. 1185, "after the final settlement ought to have been made, and no steps have been taken by the parties interested, presumption of payment and final settlement may arise, (Barlage v. Detroit Ry. Co., 54 Mich., 564,) varying in the different states as to the time and circumstances. Thus, in Alabama (Austin v. Jordan, 35 Ala., 642,) and in Pennsylvania (Estate of Bently, 9 Phila., 344,) twenty years were held sufficient to raise the presumption, in Arkansas, (State Bank v Williams, 66 Ark.,) fourteen years; in Michigan, (Barlage v. Detroit Ry. Co., 54 Mich., 565,) twenty-one years. In Virginia, a decree for accounting was refused, where from the lapse of time the loss and destruction of papers and records, and the death of all the parties cognizant of the transaction, a settlement could not be enforced without great

langer of injustice to the administrator. (Stamper v. Garnett, 31 Gratt., 550.)

It will therefore be held in this case that the proceedings in citation and attachment under sec. 6178 and 6040, is not barred, and that the time when the limitation of the right to begin the action first accrued was May 21, 1881.

C. S. Olinger, for Heir.

Keifer & Keifer, for Admr.

---

(Licking County, Ohio,, Common Pleas.)

THE CITY OF NEWARK, BY EDWARD KIBLER, AS CITY SOLICITOR v. THE NEWARK, OHIO, WATER-WORKS COMPANY.

---

*Contract of city with Water Works Co.—What rules are reasonable—Violation of injunction to restrain enforcement of unreasonable rules does not involve forfeiture of franchise, but proceeding in contempt of court against the proper officer or employe of the company.*

WICKHAM, J.

The case of The City of Newark v. The Newark, Ohio, Water Works Company, was submitted to the court upon the evidence and the pleadings.

This cause is a suit brought to enjoin the Newark, Ohio, Water Works Company, from enforcing certain rules adopted by it, which, it is claimed are in contravention of a contract previously entered into between the City of Newark, and the Water Works Company. A temporary injunction was granted by this court, and, on motion to modify, the motion was overruled, and the cause was taken to the circuit court, and there tried last term. The reasonableness and legality to the rules that are complained of were submitted to the circuit court, and they have passed judgment upon them; and, so far as these rules are concerned, there is nothing left for this court to determine as to their reasonableness or unreasonableness.

The circuit court say of the rules that are set out in the petition, and complained of as being unreasonable:

"Now, these sections (meaning the sections of the rules,) are numerous, and in this connection, I can do little more than read them, and announce the result to which the court has arrived.

"Sec. 2. The introduction of service pipe for the supply of premises with water, and all plumbing of every description for the use or distribution thereof, must be done by plumbers licensed by the company, and who shall be under bonds to the company for the faithful performance of their work, in accordance with the rules and regulations of the company.

"We haven't been able to find anything in the contract between the city and The

Water Works Company, that would warrant or justify that regulation.

"Sec. 9. The season for the use of water for street or lawn sprinklers or yard fountains, begins on Apirl 1st, and expires on October 1st.

"What I have said as to sec. 2, (says the court), applies also to that paragraph of sec. 9; and also to this: No abatetment in the regular charge will be made for any fractional part of the term. And this: The use of hand-hose or street and lawn sprinkling, will not be allowed between the hours of 9 a. m. and 5 p. m. And the latter part of sec. 9:—"Parties taking water for sprinkling must pay for both the lawn and the street.

"Sec. 20. The Water Works Company, or any private consumer, may, at any time, furnish or pay for water at meter rates, notwithstanding any contract or agreement to the contrary. The Water Works Company will furnish meters whenever used by their order; but if meters are placed upon pipes of private consumers at their request, such consumers shall pay for the meters and the necessary expenses of connecting meters to their pipes.

"We think the first sentence or paragraph of that sec. 20, is not reasonable, and not according to the contract between the parties.

"Sec. 24. The company reserves the right to change the rules and regulations and the rates for the use of water from time to time, and to make special rates or contracts in all proper cases.

"We think that that would be in accordance with the contract if it were added: "not exceeding the contract rates.

"Sec. 28. There will be no annual charge of less than $5.00 for water even if the specified uses amount to less than that sum. In case of a meter reading less than 15,000 gallons per year, there will be the same charge of $5.00 for that time.

T. B. Fulton, City Solicitor, and Edward Kibler, on behalf of Plaintiff.

Follett & Follett, on behalf of Defendant.