ATTORNEY GENERAL, *ex rel.* WOLVERINE FISH CO., *v.* A.
BOOTH & CO.

143   89
f151 ⁴463

1. APPEARANCE—EFFECT—WAIVER OF DEFECTS.

   Ordinarily a defendant who appears and pleads issuably cannot
     complain afterwards that the court has not acquired jurisdic-
     tion of the case, provided the cause is of a character within
     the power of the court to try.

2. SAME—QUO WARRANTO—LEAVE OF COURT—WAIVER OF OBJEC-
TION.

   Though there is nothing in the summons or copy served to in-
     dicate that leave to file an information in the nature of quo
     warranto has not been granted, it is respondent's duty to de-
     termine from the files and records of the court whether leave
     has been obtained and govern himself accordingly; and after
     appearing and pleading issuably to the information he cannot
     complain that leave to file it was not obtained.

3. COURTS—JURISDICTION—OBJECTIONS—WAIVER.

Failure to obtain leave to file an information in the nature of quo warranto in the Supreme Court, under Act No. 255, Pub. Acts 1899, is a defect of jurisdiction which may be waived, since the court has jurisdiction of such cases.

4. MONOPOLIES—PREVENTION — REMEDIES—QUO WARRANTO—CONDITIONS PRECEDENT.

Under sections 2 and 3 of Act No. 255, Pub. Acts 1899, the attorney general may bring quo warranto either in the circuit or Supreme Court at his option, and when he determines upon the latter course there is no necessity for a precedent suit in the circuit court.

5. SAME — SUIT AGAINST FOREIGN CORPORATION — EXTRA-TERRITORIAL EFFECT.

Whether the remedy provided by Act No. 255, Pub. Acts 1899, against unlawful combinations in restraint of trade, is not limited, in the case of foreign corporations, to a denial of their leave to do business in this State, and a revocation of their licenses, quære.

6. QUO WARRANTO—INFORMATION—DESIGNATION OF RELATOR.

Where the attorney general has the power to file an information in the nature of quo warranto in his own name, the fact that he unnecessarily adds to his own the name of a private person as relator is not objectionable, and does not amount to a lending of his name for the benefit of a private person.

7. SAME—REPLICATION—DEPARTURE.

Where an information in the nature of quo warranto against a foreign corporation asks that respondent show its authority under which it claims to be a corporation, and its authority for doing business in this State, and the pleas attempt to show such authority, replications which attack the showing upon both points by claiming the invalidity of respondent's incorporation, because in violation of the statutes of the State in which it is incorporated, and its right to do business here, by reason of its violation of our statutes, do not raise issues not germane to the information.

8. MONOPOLIES—QUO WARRANTO— PARTIES.

One of two persons who have made an unlawful combination is amenable to the law, whether his co-contractor is within reach of the law or not, and a respondent in quo warranto cannot complain that his co-contractors are not made parties respondent.

9. SAME—CORPORATIONS — ORGANIZATION AS PART OF UNLAWFUL COMBINATION.

A corporation organized pursuant to a scheme of certain persons to carry out an unlawful combination becomes, when organized, a party to the original combination, and cannot contend that its existence is not unlawful on the theory that a single person cannot make a combination under the anti-trust act.[1]

10. CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES—FOREIGN CORPORATIONS.

The authority of a State to impose conditions upon the privilege of doing business by foreign corporations is not affected by the 14th Amendment of the Federal Constitution, and that amendment presents no obstacle to the enforcement of Act No. 255, Pub. Acts 1899, by excluding foreign corporations violating it from doing any business in the State.

11. QUO WARRANTO—FOREIGN CORPORATION—EXERCISE OF FRANCHISE—PROPRIETY OF REMEDY.

Though a bill in equity would lie to restrain the unlawful acts of a foreign corporation in restraint of trade, proceedings in the nature of quo warranto are appropriate to inquire into its right to exercise franchises in this State in excess of those granted.

Quo warranto proceedings by Charles A. Blair, attorney general, on the relation of the Wolverine Fish Company, Limited, against A. Booth & Company to determine the legality of respondent's incorporation: On motion to dismiss. Submitted October 3, 1905. (Calendar No. 20,897.) Denied March 5, 1906.

*John J. Carton* (*Henry M. Duffield* and *Charles S. Thornton*, of counsel), for the motion.

*John E. Bird*, Attorney General (*Fred A. Baker* and *Edward E. Kane*, of counsel), contra.

HOOKER, J. In the information in the nature of quo warranto, filed in this court by the attorney general, upon the relation of the Wolverine Fish Company, Limited, a

[1] As to illegal trusts under modern anti-trust laws, see note to *Whitwell* v. *Continental Tobacco Co.* (C. C. A. 8th C.), 64 L. R. A. 689.

Michigan copartnership, the defendant is alleged to be a corporation, organized under the laws of the State of Illinois, and is therein charged with having, at the city of Detroit for the period of six months prior to the filing of said information, unlawfully used without authority, warrant, grant, or charter, the following "liberties, privileges, and franchises," to wit, "that of being a body corporate and politic in law, fact, and name, by the name of A. Booth & Company, and by the same name to plead and be impleaded, answer and be answered unto;" also "*that of doing business in this State, and of exercising the powers, franchises, and functions of a corporation in this State.*" The information prays due process of law, that said respondent answer "by what warrant it claims to have, use, and enjoy the liberties and franchises aforesaid." The printed record omits the process and proof of service by which the respondent was brought in. Presumably it was by the usual method.

The respondent came in by counsel, and filed its pleas, in which it alleged:

1. Its lawful incorporation under the laws of Illinois.

2. That, under the Constitution and laws of the United States, it is not required to defend its corporate existence or right to use its franchises, privileges, etc., beyond the presentation of evidence of its due incorporation, documentary proof of which it included in the plea.

3. That as such Illinois corporation it is a citizen of Illinois, and as such entitled to all of the rights, benefits and privileges guaranteed by the Federal Constitution to citizens of Illinois, and that its corporate franchises, so far as granted by the State of Illinois, cannot be questioned in this court.

4. It alleges the validity of its incorporation, and claims that the legality of its franchises cannot be "questioned, impaired, or invalidated" in this proceeding, and claims the application and protection of "section 10, art. 1, and section 1, art. 4, and section 1 of the Fourteenth Amendment to the Constitution of the United States."

The foregoing pleas appear to have application to the questions of the validity of the incorporation, and the au-

thority of the court to oust it of its corporate franchises, granted by the State of Illinois.

The pleas allege the following in relation to respondent's business in Michigan:

1. That it has complied with the laws of this State in relation to the terms and conditions on which foreign corporations may be admitted to do business in this State.

2. That on January 27, 1902, the secretary of State at Lansing issued to it his certificate, entitling it to carry on business in Michigan.

3. That it has carried on business under such authority, and has filed the required reports from time to time.

Subsequently the attorney general filed replications to the several averments of the pleas. They allege:

1. That prior to, and at the time of the organization of the respondent corporation, there was in force in the State of Illinois a statute prohibiting and punishing the making of contracts, etc., in restraint of trade, which statute is set forth at length.

2. That at the time of this organization, there were many persons and companies engaged in the business of catching and dealing in fish, in Illinois, Michigan, and the Dominion of Canada, and these were specifically mentioned.

3. That on June 29, 1898, such persons, firms, and companies entered into a combination and contract to fix and limit the quantity of fresh-water fish to be caught and bought and sold in the States of Illinois and Michigan and the United States. To accomplish this result they caused to be executed and filed the necessary papers incorporating the respondent; most, if not all, of the incorporators being members of the several persons and firms aforesaid.

That, upon the organization of the respondent, the several members of the combination sold and conveyed to W. V. Booth, the president and a director of the respondent, acting on behalf of the combination, all of the business, properties, and plants and good will of the several mem-

bers of the combination, at a valuation agreed upon, and said Booth, acting for and on behalf of the combination, paid for the same one-third in cash, one-third in the preferred stock, and one-third in the common stock of A. Booth & Co., which was duly assigned.

As a part of this arrangement the several stockholders, members, and persons composing the members of the combination executed to said Booth and his assigns an agreement and contract in writing that he had purchased the plant, business, and good will of such member, and had paid the consideration (naming it); each agreeing with the persons who signed and executed with him, and with said Booth, his heirs and assigns, that he and they would not for the next 10 years engage or be interested in the same or like kind or character of business as that theretofore conducted, or come in competition with the business of the persons engaged in such combination. The agreements, and the several plants, etc., were afterwards assigned by said Booth to the respondent, who has since operated the latter, and conducted the business theretofore conducted by said persons, etc., to the number of 200 or thereabouts. It is further alleged that this was a device, by which the several concerns by and through the use of the respondent, and with its concurrence and active assent and co-operation, combined to monopolize the business of catching and selling fish as then conducted, and as it should thereafter be conducted, and that respondent proceeded to continue and since has successfully conducted the same accordingly, and has become, and since January 1, 1902, has been the only jobber of said fresh-water fish (known in the trade as "hard fish") in the United States.

This replication predicates upon the foregoing facts the claim that by reason of the organization for such object, and its subsequent operation, the respondent was organized and is conducting business in violation of the law of the United States and Illinois, and is therefore not entitled to the protection guaranteed by section 10, art. 1, or section 1, art. 4, of the Federal Constitution, or section 1 of

said Fourteenth Amendment thereto. A second replication recites substantially the same facts, and alleges that respondent, in its organization and contracts, and in transacting business in Michigan, has violated Act No. 255 of the Public Acts of Michigan for the year 1899. A third replication is similar to the second.

On March 20, 1905, a motion was filed by the respondent, asking that the cause be dismissed for the following reasons:

"1. That no leave was given by the court to file the information.

"2. That no precedent suit or proceedings in quo warranto was begun against the respondent in this case as required by section 2 of the act of 1899.

"3. That no quo warranto against respondent, which is a foreign corporation under a charter granted by the State of Illinois, will lie, in the courts of this State, to question its lawful corporate existence.

"4. That proceedings against this respondent under the act of 1899 are, by the terms thereof, limited and restricted to the denial of respondent's right to, and the prohibition that it shall not do any unlawful business in this State.

"5. That the information is brought by the attorney general on the relation of the Wolverine Fish Company, Limited, which is not authorized by the statute of 1899, and this court has no jurisdiction over the cause.

"6. Because the court has no jurisdiction to revoke, forfeit, or vacate the charter of the respondent granted to it by the sovereign State of Illinois.

"7. Because the respondent is granted immunity and protection from any revocation, forfeiture, or vacation of, or any attempt or proceedings to forfeit or vacate the charter granted to it by the State of Illinois by section 10 of article 1, and section 1 of article 4, and section 1 of the Fourteenth Amendment of the Constitution of the United States.

"8. Because the issue attempted to be framed by the replications in this cause cannot be properly framed under, and are at variance with the allegations in the information filed in this cause.

"9. Because the information only charges the respondent with usurping the lawful powers, privileges, franchises,

and functions of a corporation in this State, and the replication admits the right of the respondent to exercise such lawful powers, privileges, and franchises, but alleges in contradiction and variance of the said allegations in the information that respondent is exercising the said powers, privileges, and franchises in the prosecution of a business which is in violation of the law of the State of Michigan against unlawful trusts and combinations.

"10. Because it appears from the record in this cause that the only issues which can be properly framed in this cause must be decided for the respondent, and that the respondent ought not to and cannot lawfully be compelled to reply to the allegations in the replication, all of which are contradictory of and variant from the allegations contained in the information which is the commencement of this suit.

"11. Because this proceeding having been commenced against A. Booth & Co. alone, Act No. 255, Pub. Acts 1899, has no application. That act is directed against combinations of two or more persons, firms, or corporations."

Accompanying this motion was an affidavit which states that:

"Deponent further says that he is informed and believes and charges the truth to be that the copy of the information served upon respondent did not contain the words 'On the relation of the Wolverine Fish Company, Limited.'

"And deponent further avers that the said Wolverine Fish Company, Limited, is a limited partnership association organized under the laws of this State, and a competitor with this respondent in the fish business in the city of Detroit, and other places in the United States, and at present is, and for some time heretofore has been, in litigation in the circuit court of the United States for the eastern district of Michigan in equity, with this respondent; that no leave was obtained from this honorable court by the attorney general to file the information in this cause; that to the best of his knowledge, information, and belief, no notice of any application for such leave was ever served upon the respondent in this cause.

"Deponent further says that to the best of his knowledge, information, and belief, no suit in quo warranto or other proceeding has been begun by the attorney general

or by any prosecuting attorney of any county of this State against the respondent herein for any alleged violation of Act No. 255 of the Public Acts of the State of Michigan for the year 1899."

Notice of hearing of said motion on March 28, 1905, was duly served.   The attorney general appears to have treated this motion as a demurrer to the replications, and on March 24, 1905, he filed a joinder in demurrer, and the case has been argued and submitted at the present term, as a motion to dismiss.

1. Failure to obtain leave of court to file the information.   Counsel for respondent assert that leave to file the information was necessary, under 3 Comp. Laws, § 9950, and that there is nothing in Act No. 255, Public Acts of 1899, authorizing a different practice.   Ordinarily a respondent who appears and pleads issuably cannot complain afterwards that the court has not acquired jurisdiction of the case, provided the cause is of a character within the power of the court to try.   *Lane* v. *Leech,* 44 Mich. 163; *Ralston* v. *Chapin,* 49 Mich. 274; *Durfee, Probate Judge,* v. *Abbott,* 50 Mich. 278; *Thompson* v. *Benefit Ass'n,* 52 Mich. 522; *Barlage* v. *Railway Co.,* 54 Mich. 564; *Stevens* v. *Harris,* 99 Mich. 230; *Sherwood* v. *Ionia Circuit Judge,* 107 Mich. 136; *Graham* v. *Cass Circuit Judge,* 108 Mich. 425; *In re Brooks' Estate,* 110 Mich. 8; *Dunlap* v. *Byers,* 110 Mich. 109; *Sarmiento* v. *The Catherine C.,* 110 Mich. 120.

Counsel contend that these authorities should not rule this case, for the reasons:

1. That there was nothing in the summons or copy served to indicate that leave had not been granted.

2. That, under the statute, the obtaining leave is jurisdictional, and any information filed without it is coram non judice.

Had leave been granted in this instance, the files and records of the court should show it.   It being wanting, respondent should have presumed its absence, and moved to dismiss before pleading.   It was its duty to act upon

143 MICH.—7.

the absence of such notice, and ascertain if it was desirable to take advantage of the point. In support of the second reason, respondent's counsel cite *Attorney General* v. *Lorman*, 59 Mich. 162, which states that, under a certain statute there cited, leave of court must be first obtained to file an information. In that case the court stated that the proceeding was not under that statute, and, if the language used was more than a dictum, it was not equivalent to saying that an information filed without leave could not be made valid by appearance and plea. It is a general rule that only a want of jurisdiction of the subject-matter cannot be waived. Here the court has jurisdiction of such cases as this. The subject is fully discussed in the case of *Peninsular Sav. Bank* v. *Ward* (on rehearing), 118 Mich. 93. The point is not well taken.

2. Was it necessary to allege a precedent suit? A discussion of this question requires allusion to the statute. Act No. 255, Pub. Acts 1899. Sections 2 and 3 of this act read as follows:

" Sec. 2. For a violation of any of the provisions of this act by any corporation or association mentioned herein, it shall be the duty of the attorney general, or the prosecuting attorney of the proper county, to institute proper suits or quo warranto proceedings in the court of competent jurisdiction in any of the county seats in the State where such corporation or association exists or does business, or may have a domicile. And when such suit is instituted by the attorney general in quo warranto, he may also begin any such suit in the Supreme Court of the State, or the circuit court of Ingham, Kent, or Wayne counties, for the forfeiture of its charter rights, franchises or privileges and powers exercised by such corporation or association, and for the dissolution of the same under the general statutes of the State.

" Sec. 3. Every foreign corporation, as well as any foreign association, exercising any of the powers, franchises or functions of a corporation in this State, violating any of the provisions of this act, is hereby denied the right and prohibited from doing any business in this State, and it shall be the duty of the attorney general to enforce this provision by bringing proper proceedings in quo war-

ranto in the Supreme Court, or the circuit court of the county in which defendant resides or does business, or other proper proceedings by injunction or otherwise. The secretary of State shall be authorized to revoke the certificate of any such corporation or association, heretofore authorized by him to do business in this State."

In our opinion section 2 should be interpreted to mean that a suit or a quo warranto proceeding may be instituted in the circuit court by either the attorney general or prosecuting attorney, and "when" (i. e., if) a quo warranto shall be determined upon, it is optional with the attorney general to commence it in the Supreme Court. It is suggested that this cause was not brought under section 2, and could not be; it being said that it has application to domestic corporations only. Whether this be so or not, section 3 clearly gives the attorney general authority to file an information in this court, and there is nothing in either section that implies a requirement for a precedent suit before proceeding in this court.

3. Does Act No. 255, Pub. Acts 1899, limit the remedy under it, against foreign corporations, to a denial of their leave to do business in this State, and a revocation of their licenses? Inasmuch as the attorney general concedes this to be the limit of the order which he claims, we need not discuss the above question.

4. May the attorney general lend his name, for the benefit of a private relator, to file an information under Act No. 255? Counsel for respondent cite no authority against such a practice. So far as we are able to judge from the record, this case is not one where this has been done. The attorney general was doubtless moved to act by the complaint of a private corporation, and upon its relation, but the cause is not prosecuted by the private corporation alone, but by the attorney general. Judging from the title of the cause, the attorney general has acted at the suggestion or instigation of a private person, but the proceeding is in the name of, and for the benefit of, the public, and it may be doubtful if a private person

could be permitted to move the filing of the information in this case, under the general rule that the State only can question the validity of a corporation and its right to do business.  See 23 Am. & Eng. Enc. Law (2d Ed.), p. 620.  In *People* v. *Trustees of Geneva College*, 5 Wend. (N. Y.) 220, it was said in a similar case:

" It was unnecessary to have filed this information upon the relation of any one, but it is not vitiated thereby; the statement of a relator is mere surplusage."

In *People, ex rel. Warfield*, v. *Railway Co.*, 117 Cal. 612, the court brushed aside a similar objection by saying:

" If the proceeding is one in which a private person can have no interest, the proceeding is not properly by relation. But the attorney general had the power to institute the proceeding, and in either form it is by him.  If, unnecessarily, he has added that it is by relation of a named person, that does no harm.  It does not convert the proceeding into a private action."

We consider this a proper disposition of the question, whatever the relation of the Wolverine Fish Company to the cause may be.

5. Do the replications seek to frame a new and different issue ?  The information apparently asks two things: *First*, that respondent show its authority under which it claims to be a corporation, and *second*, its authority for doing business in this State.  Its pleas attempt to show such authority.  The replications attack the showing upon both points by claiming the invalidity of its incorporation because in violation of the Illinois statute, and its right to do business here, by reason of its violation of our statutes. If not entitled to question its organization, the latter question is open to relator, and that replication is a proper response to respondent's pleas, i. e., it cannot be said to raise an issue not germane to the information.  It is in the nature of avoidance of the prima facie defense set up in the pleas, and is proper under the settled rules of common-law pleading.

6. Was the proceeding defective for want of other defendants? The point is made that, under the act in question, this respondent cannot be prosecuted alone. We think there is no force in such a claim, for there can be no doubt that one of two persons who have made an unlawful combination is amenable to the law, whether his co-contractor is within, reach of the law or not. The death of one would not relieve the other from his liability. What we think to be the real point aimed at by this claim is not that the "proceeding must fail because *brought* against A. Booth & Co. alone," but because it is claimed that no contract is alleged between A. Booth & Co. and any other person or corporation; in other words, that A. Booth & Co. has the right to make any kind of a purchase, so long as an unlawful combination is not a part of the contract, i. e., one person cannot make a combination under this act. It seems to be respondent's theory that, although its origin was a scheme of certain persons to organize a corporation to carry out an unlawful combination which they had made, yet when organized, it was at liberty to carry out and perform such unlawful arrangement, and perform the work cut out for it, because they, and not it, were the parties to the unlawful agreement. This is a fallacy. The corporation, when organized, appears to have become a party to the agreement and combination, and an active participant in the measures adopted to carry it out. The statute needs no unreasonably broad interpretation to justify such a conclusion. Any kind of an agreement is within its terms—that is to say, a formal contract is unnecessary, for it is not a question of validity. Any arrangement or understanding, or agreement tacit, even, is sufficient. Indeed, all such contracts are, of necessity, invalid, being declared void by the statute. A valid one could not be made. This is not a proceeding to enforce the penalties provided by the several sections of Act No. 255 of the Public Acts of 1899. It is to put a stop to the carrying out of the unlawful agreements alleged in the replications, by preventing the guilty par-

ties to the unlawful combination, of which the corporation is clearly enough alleged to be one, from continuing to carry on business in this State, whose laws it violates.

7. Does the statute infringe the Fourteenth Amendment? It is urged that the statute violates the Fourteenth Amendment of the Constitution of the United States, in that the limit to which it will permit interference with corporations is to punish or prevent *unlawful* acts by it, and it is asserted that the exclusion of corporations from the right of doing any business in the State is beyond legislative power. The authority of a State to impose conditions upon the privilege of doing business by foreign corporations is well established, and is not affected by the Fourteenth Amendment to the Federal Constitution. See 8 Cyc. pp. 1058 and 1059, and authorities cited in notes 4, 5, and 6. *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28; *Blake* v. *McClung*, 172 U. S. 239; *Philadelphia Fire Ass'n* v. *N. Y.*, 119 U. S. 110; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Paul* v. *Virginia*, 8 Wall. (U. S.) 168; *Norfolk, etc., R. Co.* v. *Pennsylvania*, 136 U. S. 118.

8. Is quo warranto a proper remedy? We have no doubt that a bill in equity would lie to restrain the unlawful acts of the corporation, done in furtherance of the purposes for which it is alleged to have been organized. See *U. S.* v. *Joint Traffic Ass'n*, 171 U. S. 567; *Northern Securities Co.* v. *U. S.*, 193 U. S. 197. But proceedings in the nature of quo warranto are appropriate to try the right of a domestic corporation to act as such, and there would seem to be a close analogy between such a case and one where the proceeding is resorted to for the purpose of inquiry into the right of a foreign corporation to do business in another State than that of its organization, as it would be in the home State if the object was to inquire into a right to exercise franchises in excess of those granted. The following authorities indicate this, and some of them relate to questions arising under statutes similar to ours: *People* v. *Improvement Co.*, 103 Ill.

491; *People* v. *City of Peoria,* 166 Ill. 517; *State* v. *Electric Co.,* 28 Wash. 490; *State* v. *Somerby,* 42 Minn. 55; *State* v. *Insurance Co.,* 39 Minn. 538; *State* v. *Water Co.,* 107 Wis. 442; *State* v. *American Book Co.,* 65 Kan. 847; *State* v. *Insurance Co.,* 47 Ohio St. 167 (8 L. R. A. 129); *State* v. *Insurance Co.,* 49 Ohio St. 441 (16 L. R. A. 611); *State* v. *Railroad Co.,* 116 Wis. 152; *People* v. *Refining Co.,* 121 N. Y. 585 (9 L. R. A. 33); *People* v. *Milk Exchange,* 145 N. Y. 267 (27 L. R. A. 437); *State* v. *Distilling Co.,* 29 Neb. 700; *People* v. *Trust Co.,* 130 Ill. 268 (8 L. R. A. 497); *Distilling, etc., Co.* v. *People,* 156 Ill. 448.

We think it proper to say that the question "whether the replications state a case under the statute of Michigan passed in 1899" is not raised by the motion, or passed upon in this opinion.

Our conclusion is that the motion to dismiss should be denied, with costs.   Ordered accordingly.

Carpenter, C. J., and Grant, Montgomery, and Moore, JJ., concurred.