IN RE ESTATE OF WILLIAM H. HALLEY.
LAVONIA HALLEY, PETITIONER, APPELLEE, v. GEORGE M. GATES, EXECUTOR, APPELLANT.

FILED JANUARY 22, 1925.  No. 22920.

Executors and Administrators: ACCOUNTING. When an executor, in his representative capacity, receives the proceeds of the sale

of real estate belonging to the estate of the decedent, he is required to account therefor, and, if he fails to do so, his bondsmen will be liable.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Burkett, Wilson, Brown & Wilson,* for appellant.

*George H. Risser, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, GOOD and THOMPSON, JJ, and REDICK, District Judge.

DEAN, J.

William H. Halley died testate, in Lincoln, March 26, 1914. His will named George M. Gates as executor. When the will was admitted to probate, May 7, 1914, Mr. Gates accepted the office and qualified as executor. In the due course of probate administration, in Lancaster county, the judgment of the probate court was that Mr. Gates, as executor, had failed to account to the estate, or to the widow of Mr. Halley, as residuary legatee, for $3,100, that being a part of $4,500 received by the executor for a deed to the Halley residence property in Lincoln. On the part of the vendee, as a precautionary measure, which is not questioned here, the deed was executed and acknowledged by Mrs. Halley and her two daughters, and their respective husbands, but was delivered to the vendee by the executor at the time he was paid the purchase price. On appeal to the district court the judgment of the probate court was affirmed, and the executor, being dissatisfied, has brought the record here to have it reviewed.

Mr. Halley left only a modest estate. It consisted of the proceeds of certain life insurance policies aggregating about $4,000 and additional cash in a sum approximating $400, some household goods and a few shares of stock in a coffee company. The real estate consisted of the Halley residence property, of the undisputed value of $4,500. Mrs.

Halley, the testator's widow, as residuary legatee became the owner of the real estate upon her husband's death.

Practically the sole contention between the testator's widow  and the executor has to do with his failure, as executor, to account for the $3,100, above referred to.  The latter sum was a part of the $4,500 received by the executor for the residence property which he sold to the regents of the state university, in 1915, pursuant to the campus extension project.  This feature of the case is briefly outlined in the following excerpt from the findings of the trial court:

"The question involved in this case, broadly stated, is whether or not the executor of the will of William H. Halley, deceased, shall be required to report as a part of his receipts coming into his hands as executor the proceeds of the sale of the family homestead which was sold to the regents of the university, at the time the campus was extended, under private negotiations carried on preliminary or in lieu of condemnation proceedings. * * * The purchase price ($4,500) was paid to and received by George M. Gates in the form of two warrants, one for $250 payable to George M. Gates as 'administrator' and one for $4,250 payable to George M. Gates as 'executor.' "  Comp. St. 1922, secs. 6749, 6750.

Both of the checks referred to in the court's findings, as originally drawn, and indorsed, are in the record.  The $250 check is payable to George M. Gates, administrator Halley Estate, and is indorsed "Geo. M. Gates, Admstr." The $4,250 check is payable to Geo. M. Gates, executor W. H. Halley Estate, and is indorsed "Geo. M. Gates, Executor." The checks were drawn and delivered to the executor by the treasurer of the campus extension project, the vendee, and both indorsements were made by the executor. The undisputed evidence shows that the $3,100, for which the executor failed to account, consisted of two loans made by him out of the $4,500 which came into his hands from the sale of the Halley property.  One of the loans was made

to the executor's son, in the sum of $1,600, and the other loan, in the sum of $1,500, the executor made to himself. Both loans were secured on land in northern Colorado which, besides being practically worthless, was for the most part, already covered by prior mortgages.

The cause was heard in the district court, as disclosed by the court's findings, "on the pleadings filed in the county court and the objections filed therein as amended" in the district court. In affirming the judgment of the probate court, the district court held that Mr. Gates received the money for the real estate, in his representative and official capacity as executor, and not as agent for Mrs. Halley, as he contends, and that, as such executor, he and his bondsmen are holden and should be required to pay to Mrs. Halley, the residuary legatee, the aforesaid sum of $3,100, which, with interest at the rate of 7 per cent. per annum from January 2, 1919, amounts to the sum of $3,814.30. The court found, however, that there should first be deducted from this sum the remainder of unpaid costs in the probate court of $25 or $30, more or less. It was further decreed that the costs of all the proceedings had on appeal in the district court, whether incurred by the executor or Mrs. Lavonia Halley, should be taxed to and paid by George M. Gates, and should not be charged against nor paid out of the sum of $3,814.30, which was found by the court to be properly chargeable to the executor in his official and representative capacity as executor.

The executor is insistent in his contention that the proceeds of the sale of the Halley residence property did not come into his hands as executor of the estate, as hereinbefore noted, but as agent for Mrs. Halley. He testified at considerable length to the effect that he talked the entire situation over with Mrs. Halley, and she agreed that the loans referred to in the court's findings should be made to his son and to himself, and that she appeared to be entirely satisfied with all that he did in respect of the money so loaned. He further testified that he had been acquainted

In re Estate of Halley.

with the Halleys for eight or nine years and that his relations with them were quite intimate. He admitted that Mrs. Halley was practically blind and crippled and unable to transact business when Mr. Halley died, and that he, Mr. Gates, at Mr. Halley's request drew up the will wherein he, the witness, was named as executor. On the cross-examination Mr. Gates was asked if, when he made the loans, he understood that he was acting as executor. He testified: "I was signing myself as such. Q. And you understood it all during the years, didn't you, Mr. Gates, until within a year or so ago, until you made your final report? A. I knew I was acting in that capacity. Q. You thought you were, didn't you? A. Why certainly; I said I knew I was acting in that capacity. Q. As executor? A. Yes, sir. Q. And you so reported to any one you had dealings with that you were the executor of this last will of Mr. Halley, didn't you? A. Executor and agent." The last answer appears to be an afterthought and, when considered in connection with all of his evidence, lacks much of being persuasive, and the trial court was justified in holding it of no probative value except as another admission of responsibility as executor. Another witness, Mr. J. H. Humpe, who held a responsible position with the campus extension committee, testified that Mr Gates, in the presence of the committee, said "that he was the executor of the estate and would carry on the negotiations for the transfer of the property."

It seems that the personal property of the estate of the value of approximately $400 and also certain shares of corporate stock in a coffee company, the value whereof was not established, were voluntarily delivered to the widow by the executor and without any order of the court, and that, as the court points out, if he had not done so, there might have been enough to pay the costs of administration therefrom, and that, besides, the widow's allowance would have been more than enough to consume all of such personal property, and in such event the costs of administration

In re Estate of Halley.

would then have been a proper charge against the proceeds of the sale of the real estate. It also appears that the widow paid the funeral expenses and the expenses attendant upon the last illness of Mr. Halley. The court properly held that, inasmuch as the executor had surrendered the personal effects to the widow, without authority, he was not now, of course, in position to apply any of such assets, or their proceeds, to the payment of the remainder of unpaid costs and expenses of administration, and that the administration proceedings could not be properly closed, and the executor discharged, until all the court costs were paid. *Willier v. Cummings*, 91 Neb. 571; *City of Detroit v. Schilling*, 93 Mich. 429; *Barlage v. Detroit, G. H. & M. R. Co.*, 54 Mich. 564.

That Mr. Gates received the money in his representative capacity, and that Mrs. Halley was mentally incompetent to bind herself to any agreement in respect of an important business transaction clearly appears, not only from the evidence of Mr. Gates, but of other disinterested witnesses as well. The testator's widow was 66 when the case was heard in the district court and she was then, and for many years had been, so enfeebled in mind and decrepit in body that she was incapable of transacting any business. And Mr. Gates admitted that she was in practically the same condition when her husband died. In respect of the widow's condition when the case was heard the court found: "The widow came into court at this hearing blind and crippled, and wheeled into court in an invalid chair, so crippled that she could not take the witness-stand nor lift her hand for the oath to be administered to her." From all the evidence it sufficiently appears that Mrs. Halley's condition, both mental and physical, from the time when her husband died, until the case was heard, was such that she was incapable of transacting business.

Counsel for Mr. Gates contend that he was deceived as to the character of the soil and the value of the Colorado land which he and his son purchased and which was given as security for the two loans in question. Even so, this

does not excuse the executor's conduct in the premises, upon which comment may be spared. He accepted the trust and his bondsmen vouched for his good conduct. They placed him in a position where his incompetence, and apparent ignorance of business affairs, caused an aged and helpless widow to be harrassed with tedious and expensive litigation and a large part of her deceased husband's modest estate to be jeopardized. And not only jeopardized but irretrievably lost if she is compelled to look to Mr. Gates alone for redress, because, as the district court in its findings very aptly observed: "As if to make the loss all the more complete, he (the executor) has, pending the administration, taken the benefit of the bankruptcy act, seeking to render himself immune from personal liability."

It is a fundamental principle of the law that a person who occupies a position of trust shall be held to the highest degree of honor and of rectitude in his dealings with the beneficiary. And particularly is this true where the estate of a deceased person is in question and the interests of helpless widows or dependent children are concerned. In such case the courts will not permit the trustee, by whatever name, or title, he may be known, to profit, beyond his lawful fees, at the expense of those whom he represents or for whom he assumes to act.

The judgment of the district court is supported in reason and in law. In *De Valengin's Admrs. v. Duffy,* 39 U. S. *282, Chief Justice Taney delivered the opinion of the court and among other things said: "Whatever property or money is lawfully recovered by an executor or administrator, after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate; and he is liable therefor, in such representative character, to the party who has a good title thereto." In the body of the opinion, at page *290, the learned jurist said: "There are, doubtless, decisions which countenance the doctrine that no action will lie against an executor or administrator, in his representative character, except upon some claim or demand which existed against the testator

In re Estate of Halley.

or intestate in his lifetime; and that, if the claim or demand wholly accrued in the time of the executor or administrator, he is liable therefor only in his personal character. But upon a full consideration of the nature, and of the various decisions on the subject, we are of the opinion that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate and he is liable therefor, in such representative character, to the party who has a good title thereto. In our judgment, this, upon principle, must be the true doctrine."

It may here be observed that the will herein provides that if the personal property is insufficient to pay the debts that so much of the real estate as may be necessary for that purpose may be sold.

In *Lewis, Admr., v. Carson*, 93 Mo. 587, it was held that, in case of a deficiency of personal assets, the real estate must be resorted to, and the heir or devisee takes subject to the payment of the debts, and that, even though an administrator or executor takes possession of real estate and collects the rents arising therefrom without an order of the probate court, he and the sureties on his bond must account therefor. In the same case it is further observed: "When an administrator and others, as residuary legatees, sell, as individuals, their interest in land, and the administrator receives the money arising from the sale and applies it in his official capacity, he and his sureties are accountable for its proper application, although it was not raised by virtue of his office as administrator."

Finally, the executor complains because Mrs. Halley has not tendered nor offered to tender back to him the notes and mortgages of the executor and his son. In the brief it is argued that "under these circumstances Mrs. Halley has ratified the actions of Mr. Gates, and he, therefore, cannot be held liable." The argument cannot be upheld. The notes and mortgages are now and always have been

worthless: But, aside from all this, Mrs. Halley's mental and physical condition was such that, when the $3,100 was obtained from her by the executor and the notes and mortgages óf the executor and his son, which were given pursuant to a loan therefor, were delivered to her by the executor, she knew nothing about their utter worthlessness. She placed implicit and childlike reliance upon the representations made to her by Mr. Gates, the trusted family friend, her sole advisor, and the executor of her husband's estate, that the security was good. And continuously, throughout the years, this mental and physical condition remained unchanged.

In view of the record before us, it is unthinkable that this aged and infirm widow should now be caused to suffer the additional hardship which the executor seeks to impose upon her. And this through no fault with which she is chargeable, but merely because of advanced age and its attendant infirmities she lacked the mental capacity, from the first, to withstand his blandishments, and, later, was unable to escape from the unhappy plight into which she was thrust by his conduct. The argument of counsel does not appeal to us.

We conclude that when an executor, in his representative capacity, receives the proceeds of the sale of real estate belonging to the estate of a decedent, he is required to account therefor, and, if he fails to do so, his bondsmen will be liable. It is ordered, however, that when restitution is made to Mrs. Halley, pursuant to this opinion, the notes and the mortgages in question be returned to the parties to whom they of right belong.

The judgment of the district court must be, and it hereby is, in all things

AFFIRMED.