[No. 27993. Department One. January 24, 1942.]

WHATCOM COUNTY, *Respondent*, v. NATE SCHUMAN et al., *Appellants*.[1]

[1]Reported in 121 P. (2d) 378.

*Little, Burgunder & Smith, Bixby & Pemberton,* and *Tom Durham,* for appellants Austin *et al.*

*Tom A. Durham,* for appellant Kinzer.

*Sather & Livesey* and *Burton A. Kingsbury,* for appellants Smith *et al.*

*Edward E. Johnson* and *F. M. Hamilton,* for respondent.

ROBINSON, C. J.—This action was brought by Whatcom county to recover the value of personal property alleged to have been converted by defendants. Dr. Smith died pending the action, and his executrix was substituted.

The questions presented on appeal are, for the most part, questions of fact.

Appellant Austin and Dr. Jacob S. Smith were majority members of the board of county commissioners of Whatcom county. Appellant Kinzer was deputy auditor and acting clerk of the board of commissioners. Defendant Cramer was the third member of the board, but he was not of the same political party as Austin and Dr. Smith, and had little voice in the management of the affairs of the county. As Dr. Smith testified in his deposition: "We don't let Mr. Cramer run much of anything; we had him out on a limb and we kept

him there." The three bonding company defendants, Firemen's Fund Indemnity Company, Fidelity and Deposit Company of Maryland, and Maryland Casualty Company, were, respectively, sureties on the official bonds of Commissioners Austin, Smith, and Cramer. Defendant Nunn, during 1936, was agent of the board of county commissioners in charge of the engineering department. Defendants Schuman and Levine were partners engaged in buying and selling secondhand machinery and scrap iron under the name of Bellingham Iron & Metal Company.

In lieu of a discussion of the evidence, we quote the following excerpts from the memorandum opinion of the trial judge:

"This controversy, an action in conversion, arises out of an attempt by the defendant, Schuman, acting on behalf of himself and the defendant, Levine, to purchase certain personal property, known in this case as rock crusher equipment, which the plaintiff county owned and possessed in 1936.

"The essential facts established by the evidence are: That during the summer of 1936, said Schuman approached the then county commissioners, Jacob S. Smith and J. W. Austin, who were then operating as a majority of the board of county commissioners of the plaintiff county, and discussed with them a proposal to purchase this equipment from the county. Finally Commissioner Smith, in the commissioners' office, when Commissioner Austin and the defendant Kinzer, then a deputy county auditor and clerk of the board of county commissioners of the plaintiff county, were present, indicated that he would approve a sale of this property for the sum of $300.00 for each of three lots into which Schuman had divided the property, the sale to be through the sheriff's office. Schuman did not agree to purchase the equipment on this occasion, but did, on August 12th, 1936, pay the defendant Kinzer $300.00 in cash, for which payment defendant Kinzer gave him a receipt (Plaintiff's Exhibit A), upon which the following language appears:

'August 12 - 1936

'RECEIVED from N. Schuman three hundred & No/100 Dollars, two hundred & No/100 - payment for old Rock Crusher & one hundred & No/100 dollars for old fittings - by order of County Commissioners.          'A. L. Kinzer, Deputy Auditor For Whatcom County.'

"The defendant Schuman then removed one lot of this equipment.

"Thereafter, on September 24th, 1936, defendant Schuman made another payment of $300.00 in cash to defendant Kinzer and obtained from him a receipt (Plaintiff's Exhibit B), which contains the following language:

'Bellingham, Wash. Sept. 24, 1936

'Received from Nate Schuman three hundred & No/100 Dollars in payment for one old rock crusher $200.00 Fittings $100.00

'C. C. BAUGHMAN, County Auditor, Whatcom County,

'By A. L. KINZER, Deputy.'

"Thereafter, Schuman removed the second lot of equipment, which completed the removal of the two rock crushers in question.

"No official record of the above proceedings was ever made by the county commissioners, nor did the payments above mentioned ever reach the county treasury.

"About a year later, the defendant Schuman was asked by the witness Endicott, then an office employee of the acting county engineer, to pay the remainder of the sale price on the rock crushing equipment. Schuman claimed that some of the equipment was no longer available and that the price should be reduced. He observed on a county record, not now identified, but then in the office of the acting county engineer, that the sum of $199.00 was indicated as the sale price for a Diesel engine which was in one of the lots of equipment he had formerly offered to purchase. Schuman thereupon agreed to pay this sum of $199.00 for this Diesel engine, which payment he made by check (Plaintiff's Exhibit C), and which payment reached

the county treasurer's office, as shown by the county treasurer's receipt (Plaintiff's Exhibit F).

"This Diesel engine has never been taken out of the possession of the county, and still remains in its former location."

Subsequently, the trial court entered more detailed formal findings of fact. In our opinion, they are supported by the evidence. The trial court concluded that, in law, Austin, Smith, Kinzer, Schuman, and Levine had converted county property valued at six hundred dollars, and that the plaintiff county was entitled to judgment against them for that amount, upon which a credit should be allowed for $199. The court's conclusions of law are in harmony with the rules laid down in the texts and in our own decisions. See 26 R. C. L. 1098, § 3; *Clapp v. Johnson,* 186 Wash. 327, 330, 57 P. (2d) 1235; *Contractors Machinery & Storage Co. v. Stewart,* 177 Wash. 263, 31 P. (2d) 546; *Hess v. Starwich,* 149 Wash. 679, 684, 272 Pac. 75; *Davin v. Dowling,* 146 Wash. 137, 262 Pac. 123.

A joint and several judgment was entered in favor of the plaintiff county for the sum of six hundred dollars, and costs amounting to $22.78, against Austin, his surety, Schuman, Levine, Kinzer, Smith executrix, and Smith surety, providing that the $199 paid to the treasurer of Whatcom county should be applied as a credit thereon. From this judgment, appeals have been taken by Austin and his surety, Firemen's Fund Indemnity Company, and by Kinzer and by Susan R. Smith, as executrix of Smith.

On behalf of Austin, it is argued that the dismissal of Cramer by the court, since he was one of the county commissioners, was the "release" of one joint *tort-feasor,* and, therefore, a release of all. The contention that the dismissal of the defendant by the court is a release under that rule seems somewhat

fantastic; but, however that may be, we find no evidence whatever in the record that Cramer participated in the conversion. It is also contended that Austin (1) neither participated in the conversion, (2) nor is there any evidence that he benefited from it. We have already answered contention (1) by approving the findings of the court. Contention (2) is correct, but wholly immaterial.

■ Firemen's Fund Indemnity Company bases its appeal upon the ground that the county failed to obtain leave of court to sue upon the bond.

Rem. Rev. Stat., § 960 [P. C. § 8245], provides, in part:

"Before an action can be commenced by a plaintiff, other than the state, or the municipal or public corporation named in the bond, leave shall be obtained of the court, or judge thereof, where the action is triable. . . ."

The bond involved was without question intended to satisfy the requirements of Rem. Rev. Stat., § 4046 [P. C. § 1684], which provides, in part:

"Each county commissioner in this state, before he enters upon the duties of his office, shall give a bond to the county, with at least two sureties thereon, in the amount hereinafter specified; . . . Said bond shall be payable to the county, . . ."

By some inadvertence however, the bond was not made payable to the county, but to the state of Washington. Perhaps it was prepared in the belief that Rem. Rev. Stat., § 9930 [P. C. § 508], applied. This section reads as follows:

"All official bonds required by law of officers shall be in form joint and several, and made payable to the state of Washington, in such penal sum and with such conditions as may be required by law."

The bond was not rendered void by this error. The county could, nevertheless, rely on it as a bond made for its benefit, and as such could sue on it without the permission of the court.

██ Appellant Kinzer contends that the weight of the evidence does not show that he in any way participated in the conversion. He testified that he did not receive any money from Schuman, and that the signatures on the two receipts, heretofore set out in the quotation from the court's memorandum opinion, were not his, but were forgeries. We have examined the testimony and have no doubt that the money was paid to Kinzer, as testified to by Schuman, and that he executed the receipts. A large number of documents bearing Kinzer's admittedly genuine signature were introduced in evidence, and, although we are not handwriting experts, we can find no dissimilarity whatever between the signatures on the receipts and the signatures on those documents. Dr. Smith also testified that he was familiar with Kinzer's signature—as he must have been, as Kinzer was acting clerk of the board—and that the signatures on the receipts were Kinzer's. In our opinion, Kinzer received the money, executed the receipts, and failed to turn the money over to the treasurer. As far as the record shows, Kinzer not only assisted in the conversion of the property, but converted the money paid him as well.

The appeal on behalf of the Smith estate is prosecuted upon a dual theory, (1) that the evidence does not show that Dr. Smith participated in the conversion, if any; and (2), in any event, the action abated upon his death.

The first contention raises the most difficult question presented by the appeal. Dr. Smith gave a deposition in which he testified that he met Schuman in the courthouse one day in the summer of 1936, and Schu-

man asked him if he would join with Austin in selling the property. Schuman testified to the same effect. Dr. Smith testified that some days later Schuman came to the commissioners' office: .

"Q. When did you next meet Nate Schuman, and what took place, with reference now to this junk, as you call it? A. Well, they came in some time after that when we were having a commissioners' meeting downstairs and Austin and I were present. Q. Was Mr. Cramer there? A. No. He had gone down to the Elks' Club for lunch; and he addressed his remarks solely to me, although I was not the Chairman. He didn't address his remarks to Austin at all; he addressed them to me, strange to say. He said: 'I have divided this junk out there up into three parcels,' and he had a piece of paper in his hand and he had a lot of notations down, each of the three parcels consisting of so and so, which I don't remember and didn't pay any attention to at the time, and he had $200.00 marked after each one of them; in other words, $600.00 for the whole outfit, and I, to be facetious, put $300.00 added; in other words, $900.00 for the whole business, and I said: 'Nate, if you are prepared to go as high as $900.00 for this, so far as I am concerned individually, I will go up and have the Prosecuting Attorney make out an order for Sheriff's sale. I don't know whether the others will join me or not, but that is as far as I am concerned, but it will have to be at least $900.00; otherwise, there is no use.' And he went away."

He further testified that he never heard anything more about the matter whatever until a political pamphlet was circulated in Bellingham during 1937 or 1938, charging that there had been an illegal sale. Schuman's testimony agreed with Smith's concerning his visit to the commissioners' office, to the extent that Austin and Kinzer were both present, and that he [Schuman] took with him a yellow sheet of paper on

which the property was segregated into three parcels, with the figures two hundred dollars written opposite each parcel; that Smith took a pencil out of his pocket and said the property was worth more, and put three hundred dollars opposite each parcel instead of two hundred dollars, saying "I will up you"; and that he [Schuman] thereupon left, telling the commissioners he would see them later. He further testified that some days later he told Austin that he would take the property, and that he never met Smith in connection with the matter again, and, as far as he knew, Smith never heard of the completion of the transaction. But, under interrogation of Dr. Smith's counsel, he further testified as follows:

"Q. And do you claim that you have told all, now, that Jake Smith said? A. Yes sir. Q. You came in and you said: 'Gentlemen, I would like to buy that stuff and here I have indicated $200.00 for each parcel,' and then Jake Smith says: 'I will up you $100.00 on each one,' and that was all that was said? A. That is right. Q. Now, then, we are all frail, and we are all given to lapses of memory. Let me ask you if you heard Jake Smith say this, now, just to refresh your memory, after he took the marked paper with $200.00 on each one, did you hear him at that time: 'Nate, junk is pretty high now, and this property should be worth in the neighborhood of $900.00,' or words to that effect, and then say these words: 'Nate, if you are prepared to go as high as $900.00 for this, so far as I am concerned, individually, I will go up and have the prosecuting attorney make out an order for sheriff's sale. I don't know whether the others will join with me or not, but that is as far as I am concerned, but it will have to be $900.00. Otherwise, there will be no use.' Do you remember hearing Jake Smith say anything to that effect? A. I never heard him say anything like that at all. Q. All that was done was when you pushed in this $200.00 offer on each item, Jake 'upped' you $300.00, and there was nothing more

done at that time? A. Well, that is all. When he upped me that $900.00, I understood that was a standing offer."

In preparing his memorandum opinion, the trial judge seems to have accepted Dr. Smith's version as to what took place in the commissioners' office, but it is evident that he concluded, before entering his formal findings of fact, that he could not find that all that Dr. Smith had in mind was a legal sale, carried on in the legal way, for he makes no mention of that in the findings.

We find nothing in the record that would warrant us in setting aside or supplementing the findings of the trial court. In our opinion, Schuman was by far the most candid of the four principal defendants who testified at the trial. Kinzer repudiated his own signatures. Austin swore that he was not even present when Schuman made his yellow paper bid in the commissioners' office, although both Smith and Schuman testified that he was. Dr. Smith disclaimed all knowledge of certain official records of which it seems unbelievable that he could have been wholly ignorant.

We are further of the opinion that the judgment is good as against Smith's estate by virtue of Rem. Rev. Stat., § 1520 [P. C. § 9888]:

"Any person, or his personal representatives, shall have an action against the executor or administrator of any estate or intestate who in his lifetime shall have wasted, destroyed, taken, or carried away, or converted to his own use, the goods and chattels of any such person, or committed any trespass on the real estate of such person."

We have heretofore held that a private corporation may have the benefit of the statute. *West Coast Transport Co. v. Landin,* 187 Wash. 556, 60 P. (2d) 704. There would seem to be no reason why a municipal or

public corporation should not likewise be held to be within the statutory words "Any person."

Enrichment of the Smith estate is not a necessary element. *Barnum v. Jackson*, 165 Wash. 347, 5 P. (2d) 497.

The judgment appealed from is affirmed.

STEINERT, MAIN, BLAKE, and DRIVER, JJ., concur.