NORTHEAST TEXAS MUNICIPAL
WATER DISTRICT, Appellant,

v.

W. B. MIMS, Appellee.

No. 7623.

Court of Civil Appeals of Texas.

Texarkana.

March 2, 1965.

J. R. Cornelius, Sr., Cornelius & Cornelius, Jefferson, for appellant.

Eades & Eades, Dallas, for appellee.

DAVIS, Justice.

A condemnation case. Plaintiff-appellant, Northeast Texas Municipal Water District, presented a petition to the County Judge on or about February 26, 1958, for condemnation of 9.78 acres of land situated in the Robert Mason Survey in Marion County, Texas, belonging to defendant, W. B. Mims. The decision of the Commissioners was to award Mims the sum of $2,665.00. A deposit was made and the appellant took possession of the property. W. B. Mims

filed his objections and exceptions to the award of the Commissioners and perfected his appeal to the County Court, The case remained on file until May 28, 1964.

W. B. Mims died on November 1, 1963. On May 26, 1964, a verified plea in abatement was filed and presented to the trial court giving notice of the death. The plea in abatement set out the facts that Mims died testate, and in the Will he appointed Glenda Belle Grisaffi, a granddaughter, and John Henry Mims, a son, as Co-Independent Executors of his estate, to serve without bond. The plea in abatement further identified all the heirs of W. B. Mims, deceased, as: Mary Mims, surviving wife, and eight children; Warren Berry Mims, Andrew Frank Mims, Edward Hartz Mims, William Baldwin Mims, Jr., John Henry Mims, Ben Etta Frances Cates; Catherine Ruth Hatcher, the wife of J. R. Hatcher; Emma Elizabeth King, wife of Emory King.

Counsel for appellant contested the plea in abatement on the theory that the lawyers representing W. B. Mims, deceased, were in truth and in fact representing the heirs of W. B. Mims. There was actually no evidence of any employment of said attorneys by the heirs of the estate. There were some statements made that one of the attorneys had announced ready for trial in April with the positive assurance that the case would be tried on May 28, 1964. All the evidence necessary to show the death of Mims was offered at the hearing before the case went to trial. According to the evidence, one of the sons of Mims, deceased, on Friday, May 23, 1964, went to the office of the lawyers that had purportedly made the announcement in April that the case would be tried in May, and the lawyer inquired of him as to the whereabouts of his father. The son announced that his father had died on November 1, 1963. That was the first notice the lawyers had of such death, because Mims was a resident of Dallas, Texas, and the law firm is situated in Marshall, Texas. The lawyer immediately tried to call the attorney for appellant to advise him of the fact of the death of Mims. Being unable to reach him, he prepared a verified plea in abatement and filed it on Monday, May 26, 1964. In the contest the appellant did not show any trade that was made between the heirs of W. B. Mims and the attorneys. The trial court overruled the plea in abatement and forced them to trial against their wishes on the pleadings that had previously been filed by W. B. Mims, deceased, on May 13, 1958. There were no additional pleadings filed by the attorneys that could be attributed to the heirs.

After the attorneys were put to trial, the jury was impaneled and the rule was invoked. Counsel for appellant then took the position that the heirs of W. B. Mims could not remain in the courtroom during the introduction of evidence because they were not parties to the suit.

Under the record in this case, we are confronted with a fundamental error as to the jurisdiction of the trial court. This question is not raised by the appellant or by the attorneys representing W. B. Mims, deceased, but it is so obvious that it can not be overlooked. Jurisdictional questions of the trial court are always open for consideration on appeal. Nichols on Eminent Domain, Vol. 6, 3d Ed., Sec. 26, 731(2). In a condemnation case, where the death of the sole owner of the property occurs during the proceedings but prior to the trial of the case, his heirs or legal representatives are entitled to be made parties to the suit. Nichols on Eminent Domain, 3d Ed., Vol. 2, Secs. 5.5, 5.5(1) and 5.5(2). In speaking of the jurisdiction of the trial court it is said in 1 C.J.S. Abatement and Revival § 172, p. 223, in part, as follows:

"Generally speaking, an action, suit, or proceedings involving or affecting the title to real property, such as one to * * * condemned land for public use, * * * should be revived or continued, after the death of the defendant, against his heirs or devisees * * *."

Also see 1 C.J.S. Abatement and Revival § 170, p. 222; Glass v. Cook, 257 Ala. 141, 57 So.2d 505; Whatcom County v. Schuman, 12 Wash.2d 290; 121 P.2d 378; 1 Am.Jur. 2d 82, Sec. 47; 1 Am.Jur.2d, p. 133, Sec. 118; and 1 Am.Jur.2d 136, Sec. 122.

Appellant relies upon the case of Bragdon v. Wright et al., Tex.Civ.App., 142 S.W.2d 703, wr. dism., to support his action in contesting the plea in abatement. In this case, it appears that Walter Wright was a veteran of World War I. He was drawing World War I compensation. He secured a license and married Hettie Wright on September 5, 1936. They lived together a short time, and Walter Wright was persuaded to leave Hettie Wright and live with a relative. G. T. Haggard was his Guardian. The record doesn't show whether he was appointed Guardian before or after the marriage. Hettie Wright was told that Walter Wright was a ward of the Federal Government, and that she had violated the law in marrying him. She was persuaded to execute a waiver, and Walter Wright secured a divorce on May 11, 1937. The waiver was executed prior to the time that the suit for divorce was filed. Walter Wright died in August of 1937. At the time of his death, he was seized and possessed of 52 acres of land and certain personal property. Hettie Wright did not learn of the divorce until later in the year, and filed a suit against G. T. Haggard, the former Guardian, and K. J. Bragdon, temporary administrator of Walter Wright, to set the judgment of divorce aside on the grounds that Walter Wright was not insane or mentally incapable of entering into a marriage contract, and that the judgment was procured through fraud, and that no jurisdiction had been procured because the purported waiver was executed prior to the filing of said suit. The case was tried to a jury and all the special issues were answered in favor of Hettie Wright. The record does not show that a verified plea in abatement was filed in the case giving the names of the next of kin of Walter Wright deceased. It seems that the record showed that his mother and father had died prior to his death. He had no brothers or sisters. But he had collateral kin. The court pointed out that a waiver of notice executed prior to filing the divorce suit would render the judgment void. He went on to say that such expression is not entirely correct because a void judgment is one without any force or effect and may, for that reason, be attacked in any court in any proceedings either direct or collaterally. He pointed out that the record showed, without objections, that waiver of notice was executed prior to the filing of the divorce suit. In view of the law in the case, he pointed out that the collateral kin of Walter Wright were necessary parties to the suit. He then pointed out the question, upon the undisputed facts, shown below, that the collateral kin of Walter Wright could be regarded as being parties to the present suit. They were not formally named as defendants, but they had employed the same attorney to represent them, and gave him written power to do so. Actually, the temporary administrator being a party defendant, it seems that the court would have jurisdiction, whether or not the collateral kin were made parties. In the case, the attorney for the next of kin prepared the pleading, voluntarily appeared in open court, took exclusive charge and control of the defense, filed and presented all the necessary and proper answers and pleas, selected the jury, examined and cross-examined the witnesses, and litigated every issue as effectively as could have been done had they formally intervened or otherwise appeared in their own name instead of in the name of the administrator of the estate.

▇ Although this case has been pending for quite a length of time, there is no limitation of time to present the verified plea in abatement. W. B. Mims died on November 1, 1963. The plea in abatement was presented to the court on May 26, 1964. In the case of Faulkner et al v. Reed, Tex. Civ.App., 229 S.W. 945, N.W.H., the court said:

*"There must be before the court a legal representative.* And in cases where the suit has been instituted and proper service had, upon the death of the party such suit abates, and cannot be prosecuted further without the substitution of a personal representative. Nor can such appearance be made by a person not so authorized. Jones v. Jones' Heirs, 15 Tex. 463; Greer et al v.-Ferguson et al, 56 Ark. 324, 19 S.W. 966." (Emphasis added.)

See, also, Barlage v. Detroit G. H. & M. Ry. Co., 54 Mich. 564, 20 N.W. 587; Trahan v. Roberts, Ct.Civ.App., 48 S.W.2d 503, N.W.H.; 1 Am.Jur.2d 82, Sec. 47; 1 Am.Jur.2d 133, Sec. 118; 1 Am.Jur.2d 136, Sec. 122.

Rule 152 of the Rules of Civil Procedure (formerly Art. 2080, R.C.S.), "Death of Defendant", reads as follows:

"Where the defendant shall die, upon the suggestion of death being entered of record in open court, or upon petition of the plaintiff, the clerk shall issue a scire facias for the administrator or executor or heir requiring him to appear and defend the suit and upon the return of such service, the suit shall proceed against such administrator or executor or heir."

 It appears from the evidence in the case that the Will had not been filed for probate. Therefore, the Clerk of the Court should have issued writs of scire facias to each of the heirs of W. B. Mims, deceased, requiring them to appear and defend the suit. Actually there was no *legal representative* in the case at all. The equity rule has been made the rule in this state in all situations where the cause of action survives the death of any party pendente lite. 1 T.J.2d 17, Sec. 1. The trial court should have continued the case until the heirs had been made parties defendants. In the event appellants did not make the heirs parties defendants, the only jurisdiction the trial court would have had would be to dismiss the cause of action. A good discussion will be found in 1 T.J.2d pps. 76–142, incl., Secs. 57 to 141, incl. The trial court was without any jurisdiction whatever in the case at bar.

The judgment of the trial court is set aside and the case remanded with instructions that the plea in abatement be sustained and that the appellant be permitted to make new parties. All costs of this appeal are taxed against the appellant. W. B. Mims was deceased before the case was called for trial, and this court is without authority to tax the costs against him.

It is so ordered.