PEOPLE, *ex rel.* ATTORNEY GENERAL, *v.* MICHIGAN SANI-
TARIUM & BENEVOLENT ASS'N.

1. QUO WARRANTO — CHARITABLE CORPORATIONS — CONDUCT FOR
PROFIT—INFORMATION—SUFFICIENCY.

An information in the nature of quo warranto against a cor-
poration organized as a charitable hospital under Act No.
242, Laws of 1863, which alleges that defendant's business is
not being conducted as a charity but for the profit of its offi-
cers, and that it has accumulated a large amount of property
which it claims is exempt from taxation, and that defendant
was organized under said law for the purpose of claiming the
exemption for its property and not as a legitimate charity,
states a case under section 9950, 3 Comp. Laws.

2. SAME—FRANCHISES—RIGHT TO EXERCISE—EQUITY—PROPRIETY
OF REMEDY.

Though a bill in equity would lie to restrain a corporation
organized for charitable purposes under Act No. 242, Laws of
1863, from conducting a hospital and sanitarium for profit,
the remedy by quo warranto is also appropriate, both reme-
dies being provided by the statute, sections 9755, 9950, 3
Comp. Laws.

3. SAME—RELIEF GRANTED.

An adjudication of ouster, involving a deprivation of all ca-
pacity to administer the trust reposed in defendant, is not
the only relief grantable in these proceedings, but defendant
may be prevented by a proper order from exercising any fran-
chises or privileges not conferred upon it by law.

4. SAME — JUDGMENT — OUSTER — EFFECT — ADMINISTRATION OF
CHARITY.

An adjudication of ouster will necessitate the court's taking
control of defendant's property until a decree can be made
which will apply the donation to the proper beneficiaries.

Certiorari to Calhoun; Parkinson, J., presiding. Sub-
mitted June 13, 1907. (Docket No. 36.) Decided March
17, 1908.

Quo warranto proceedings by the People of the State of

Michigan, on the relation of John E. Bird, attorney general, against the Michigan Sanitarium & Benevolent Association to determine the liability of respondent for taxes. There was an order overruling a demurrer to the information, and respondent brings certiorari. Affirmed.

*O. S. Clark* (*Dallas Boudeman*, of counsel), for relator.

*Alfred J. Mills* and *Jesse Arthur*, for respondent.

Moore, J. This is a certiorari proceeding to review the action of the circuit judge in overruling a demurrer to an information in the nature of a quo warranto. The following statement as to what is contained in the information is taken from the brief of one of the counsel for relator. It alleges:

"That on the 6th day of July, 1898, articles of association pursuant to, and in accordance with, provisions of Act No. 242 of the Public Acts of 1863, entitled 'An act for the incorporation of hospitals and asylums in cases where valuable grants or emoluments have been made to trustees for such purposes,' and the acts amendatory thereto and supplemental thereof, were duly filed and recorded in the office of the secretary of this State by and at the instance of certain persons as incorporators, and said incorporators thereby formed themselves into a corporate body pursuant to the act above mentioned, under the name of the Michigan Sanitarium & Benevolent Association, having its principal place of business at Battle Creek, Michigan; that the purposes of said alleged corporation were:

" 'To found a hospital or charitable asylum within the State of Michigan for the care and relief of indigent or other sick or infirm persons, at which institution may be received also patients and patrons who are able to and do pay for the benefits there received, and which institution shall devote the funds and property acquired and received by it from time to time from all sources exclusively to maintaining itself, improving its condition and facilities, extending its benefits and usefulness, and facilitating and promoting its purposes by such sanitary, dietetic, hygienic and philanthropic reforms and efforts as are germane or auxiliary thereto; all of its

said purposes being undenominational, unsectarian, philanthropic, humanitarian, charitable and benevolent, and in no manner, directly or indirectly, for private profit or dividend paying to any one.'

"That while said association formed under the said statute, and while operating and conducting a charitable hospital and asylum to the extent of administering said trust, the building and grounds upon which it stands, while occupied for the objects and purposes specified, are exempt from taxation; that said association claims that all of its buildings and grounds and personal property are exempt from taxation, though the same is greatly in excess of that which is necessary for the administering of said trust, and said corporation has refused, and still refuses to pay the taxes levied upon its property by the assessor of the city of Battle Creek, covering the State, county, city and school taxes; that said corporation has ever since its organization exercised, and now exercises, certain franchises and privileges not conferred upon it by law and in violation of the act under which it is formed, and under its articles of association; that while claiming to maintain and operate a so-called charitable hospital said corporation has a thoroughly equipped sanitarium, and is patronized almost exclusively by patients abundantly able to pay for the care and treatment received; that said institution is not conducted solely nor chiefly as a charitable institution, as is contemplated and required by the statute under which it is organized; that the charity claimed to be extended by such association, except in rare cases, is not to needy and worthy indigents, but consists in discounts and favors to those able to pay for the care and treatment received; that a majority of the so-called charity patients are nonresidents of this State, in violation of the provisions of the statute under which said association is organized; that while said association claims to pay no dividends to its stockholders, yet as a matter of fact, it purchases its supplies largely from corporations and associations composed wholly or principally of the officers and managers of the association, and thereby such officers and managers derive and receive large benefits and profits, contrary to the intent of the statute under which it is organized, and while said association claims to be undenominational and unsectarian, yet it makes discriminations in favor of certain patients by reason of their affiliation with certain sects or religious

organizations, and for other improper and unlawful reasons; that prices charged by said association to its patients are not uniform and just, as contemplated and required by law, the prices charged some of its patrons being unjustly exorbitant, while others, financially able to pay for care and treatment, are cared for and treated without charge, or at a discount; that said association is not properly and lawfully administering the trust under which it claims to be operating, and in fact it has incurred indebtedness to the extent of several hundred thousand dollars, which it has attempted to secure by a lien in the way of a mortgage upon its property.

"The information further sets forth the manner in which the property was acquired by the present association from a former corporation known as the Health Reform Institute, which institution was before the formation of the present association carrying on the same business and at the same place as the present association is carrying on, and was formed under a statute of the State, but not formed under the statute which exempted it from taxation; and that when the present association was formed by certain persons pretending to denote the aggregate sum of $7,000 to certain trustees for the purpose of founding the present association, and the property which was turned over to it by the Health Reform Institution is greater than said $7,000 mentioned; that the Health Reform Institute being formed under another statute of the State made no claim that its property either real or personal was exempt from taxation, although it extended just as much charity as is extended by the present association.

"The information further states that while the present association, respondent, purports and claims to have been formed under the statutes of this State, for the purpose of establishing a charitable hospital, it was not, in fact, formed for any such purpose, but was formed, and since its formation has been carrying on its business for the purposes of profit, and not for the purposes of charity and benevolence; and that while purporting and assuming to be a charitable institution does so principally for the purpose of withdrawing or shielding its property from taxation, and for the purpose of accumulating a large amount of property to be held free from taxation; that its general manager is Dr. John H. Kellogg, and his assistant is William K. Kellogg, said two persons having charge and

control mainly of the management of the affairs and financial business of the institution; and that a great amount of the provisions and supplies of said respondent are caused by the said John H. and William K. Kellogg to be purchased of certain corporations and associations in which the said two named persons are large stockholders, and the said corporations and associations are named in said petition; that said purchases of provisions and supplies from said corporations and associations are made by respondent at such high prices that a large amount of profits arise thereon to said corporations and associations from which said purchases are made, and these profits are divided among the stockholders of said corporations, a considerable amount of which is received by the said John H. and William K. Kellogg as stockholders in said corporation, and other said profits are received by and divided up amongst other stockholders of said corporations and associations who are also interested in the management of respondent's business, and in this way the business of said respondent is being operated for the profit and individual advantage of the men who control and manage it; that while said respondent purports to be acting as a charitable and benevolent institution, it is continually advertising its business in this State and various other States of the Union, and in various foreign countries, and is by said advertisements attempting to induce, and are inducing large numbers of patrons to come to Battle Creek to be treated by said association for various diseases, and to become roomers and boarders for hire at the building, the legal title of which is in the name of said respondent, and many roomers and boarders are allowed to occupy said building who are not treated for any disease, and are not, in fact either indigent, sick or infirm persons, but are allowed to room and board at the building of the association the same as they would do at a public hotel or boarding place; that of the whole number of persons treated by said association for diseases, but a small proportion are treated as charity patients and without charge; a few are occasionally treated free; that of the whole number of persons treated by said association not to exceed 5 per cent. are patients to whom concessions are made in the way of reduced charges, and may be claimed as charity patients; a portion of this number receiving free treatment, a portion receiving treatment at less rate than other patients but are charged in many instances at a rate no less in

amount than the actual cost of such treatment; and that of such so-called charity patients many of them come from other States of the Union, and other countries, and are attracted to said association by its advertisements, and such association is spending large sums of money in advertising its business for the purpose of obtaining patronage of persons outside of this State; and of the small percentage of persons to whom charity is extended, less than one-half of the whole number are residents of this State; that while other patients and patrons pay for their board and treatment, said association receives from them large sums of money, as a matter of fact said association is not carrying on its business solely and principally for charity, but in fact is carrying it on principally for the making of personal profits; that the respondent instead of carrying on the business of administering charities and benevolence is operating a general sanitarium for hire and profit; its principal business is the entertainment of patrons, that by its advertisements that are sent broadcast throughout this and foreign countries, it has induced people to come to its buildings for board and lodging; that respondent carries on a series of entertainments for its guests, and in fact its principal business is that of carrying on a general sanitarium or hotel and not a hospital; and that it has various agents engaged in soliciting patronage for it; that it has daily agents at the various railroad trains arriving at Battle Creek soliciting people to come to its institution; that it has in many cases charged very excessive rates, some of which rates are far beyond the customary rates for such accommodations, and out of which large profits are made, charges in some instances being as high as $75 per week, while in other instances much less than this is charged for the same accommodations, and which charges for services are much more than is needed for the successful maintenance of said respondent's association as a charitable or benevolent institution; that much more money is received than is expended for the legitimate objects of the association; and amongst other business carried on the premises of said respondent is that of printing and, advertising, which brings in considerable profit, and is carried on by a separate association, known as the 'Battle Creek Sanitarium Co., Limited,' which last-named company uses and enjoys a considerable portion of the real and personal property of the respondent without

the payment of any rent or compensation therefor; and by the use and advertisement of the name of said respondent, said Battle Creek Sanitarium Company, Limited, has been able to obtain large profits or emoluments, and to accumulate large and valuable properties, and to make its business very profitable; that the persons who control said respondent, and who are the same persons who are interested as members of the said Battle Creek Sanitarium Co., Limited, and are members of the other associations and concerns mentioned in said information (and who are receiving profit thereby) have caused to be purchased a large tract of land in the city of Battle Creek, the title of which they have caused to be taken in the name of the Michigan Sanitarium & Benevolent Association, respondent; that upon the lands they have caused to be erected a general sanitarium and hotel building 550 feet in length, 46 feet wide, 6 stories in height, and various additions thereto, a large part of the same having been fitted up in rooms for the purpose of taking patrons for rooming purposes, and for dining rooms attached, to use in boarding such patrons; said building having accommodations for about 600 guests, and said association having in the neighborhood of 5,000 patrons living in and being treated at said sanitarium and hotel per year; that out of the profits of said association about $600,000 has been expended by said respondent in erecting said buildings; that the persons before named have also bought a number of other parcels of land from said profits of its business, the majority of said parcels being improved with dwelling houses thereon, and after having been so purchased, respondent has caused its patrons and boarders coming to its sanitarium to room therein; that while all of said property was formerly tax paying property, not only the land on which said large sanitarium building has been built, but also the dwelling house property purchased as before mentioned, it is now claimed by the respondent and the aforesaid persons who are managers and in control of said association, that all of the said real estate and buildings are now freed from the payment of all taxes and assessments for said State, county, school and city purposes, because of the fact that the title of said real estate now stands in the name of said respondent, and because respondent is formed under a charitable statute before mentioned and by reason of its being so formed, said respondent claims

that all of its real estate, buildings and other property are not subject to taxation; and that the same are now exempt from taxation, and it refuses to pay taxes upon any of said property, and that the fair value of the property so claimed by respondent to be exempt from taxation is of the amount of about $1,000,000; that the ordinary amount of taxes which the said property would legally produce for said school, county, city and State purposes, if said property were assessed for taxes the same as other property of like character and situation in the city of Battle Creek, would be in the aggregate for said school, county and State purposes the sum of $10,000 or upwards per annum, a list of which real estate is attached to the information and maked 'Exhibit A,' and found on pages 22 to 29 of record (this does not include the personal property of respondent); that out of said property and the business of said association the respondent receives a gross income in the neighborhood of $2,000,000, and that the net profit thereof amounts to substantially $100,000 per annum; that year by year said respondent and those managing its business has purchased different and distinct detached lands with the buildings thereon, taking title thereto in its corporate name, and its managers insist that all of its said property, including said detached parcels of land, are free from taxation because the title stands in its name, and refuses to pay taxes thereon.

" It is further alleged that it has not been heretofore the bona fide desire and intent of the persons maintaining the affairs and business of said respondent, either at the time of the formation of respondent association or since, to operate said association or its business, and use its property for the purpose of charity or benevolence, or for a charitable hospital; but that the true object of the formation of said association was for the purpose of accumulating a large amount of property, taking title thereto in the so-called charitable association, to make a large income or profit out of the same, and at the same time to avoid the payment of taxes which are ordinarily assessed against such class of property, and to escape taxation upon the property owned and used for profit and for purposes other than charitable; and that the whole of the funds subscribed and purported to be contributed for charitable purposes at the time of formation of respondent is claimed to have been only the sum of $7,000.

"It is further alleged that the actions and doings of

the persons who are in the management and control of said respondent association and who formed the same, are in fraud of the rights of the State and its people and of the municipalities of the State, which are interested in the taxes accruing from levies upon the property within said State and within said municipalities.

"It further alleges that John H. Kellogg, the manager of said respondent, is a physician and surgeon, and that all medical treatment and surgical operations are under his immediate supervision and control, he prescribing treatment both medical and surgical, and while in many instances said John H. Kellogg performs surgical operations and the charges for the same are paid to said association, yet in other instances said charges for treatment or surgical operations are received by said John H. Kellogg for his own benefit, and he retains the money paid for the same; that while said respondent association claims to have been incorporated under the aforesaid statute for the purpose of administering charities and benevolences, and that its purposes are undenominational and unsectarian, yet as a matter of fact, the business of said association is and has been carried on in the interest of the religious denomination commonly called the Seventh Day Adventists, and t h atnearly, if not entirely all, of the physicians, nurses and attendants employed by said association are members of the Seventh Day Adventists Church Society, and said last named society in fact controls to a considerable extent the respondent association; that the teaching of said church society is promulgated in said association, and said association is being carried forward in a great measure by said church society for the purpose of promulgating its belief; amongst other things, Saturday instead of Sunday being observed as the Sabbath Day; that the said respondent association is not now, and for a long time past has not been exercising acts under its franchise or articles of association; that for a long time it has been, and is, carrying on its business in direct conflict with the provisions and intent of the statutes under which it is formed; that it has substantially abandoned the work of extending charities and benevolences for the relief of the indigent, or other sick or infirm persons, and has used the funds which were purported to have been furnished for the establishment of a charitable asylum as contemplated by the statute of the State, for the purpose of gain and profit to the individuals who

purported to act as its trustees and managers of said association; that said association has formed a general sanitarium resort and hotel for the purpose of obtaining patrons and guests whom it charges excessive sums of money for care, board, treatment and entertainment, the profits of which are not for charitable but private purposes of profit; that respondent has established and is operating a boarding and rooming establishment; that under color of its incorporation under the aforesaid statute of the State of Michigan, respondent has not been carrying out or accomplishing the beneficent purpose contemplated by the law of the State, but in the business of making large investments in lands, buildings and other property for the purpose of obtaining profit out of the same, and at the same time withdrawing said properties from taxation and avoid the levying and collecting of taxes thereon; that its business has become that of profit-making to the persons who have formed it and who are carrying on its operations; that the object of the statute is to relieve corporations from taxation where their principal business is to care for indigent persons, giving care and treatment where such persons reside in this State and voluntarily seek the benefits of a charitable hospital; that said association has by its various advertisements and solicitors, attracted and obtained from other States and countries indigent persons and others to come into this State to receive care and treatment and entertainment and board at its institution for the purpose of obtaining for the persons maintaining the association large profits in the ways hereinbefore stated and in other ways; that no one outside of the managers of said institution is given any authority to invite or bring to said association for treatment or care, indigent, sick or infirm persons, and the managers of said respondent association do not generally offer to indigent persons any care or treatment; they do not extend any general invitation to the public to bring to such institution any worthy indigent persons for treatment, and the so-called charities extended by said respondent institution are almost, if not entirely, limited to the members of the Seventh Day Adventists Church; that a large majority of the persons to whom charities are extended are amply able to pay for their care, board, room and treatment; that the business of said respondent association is being carried forward for the benefit of other associations in which its members are interested,

and for the benefit of the church society of which its managers are members, and in which they are interested financially and otherwise; that the purposes for which said association purports to have been formed are not being carried on by said association, and have failed in execution; that said association is not principally engaged in charitable work, but mainly in other work; and that the manner in which the managers of said respondent have carried forward its business are in fraud of the people of the State of Michigan and the municipalities of the city of Battle Creek and the State; that said association has forfeited all rights to which it might have been entitled as a charitable corporation, and all rights to further act in a corporate capacity, and its property instead of being exempt from taxation is now, and for years past has been liable to taxation, and said property should now pay its proportion of the taxes of the city, State, county and school, in which said property is located."

The important objections of the appellant to the action of the court below are:

"Equity alone has jurisdiction and authority to deal with the propositions submitted by the acts set up in the amended information. As these propositions relate in no way to the life and being of the corporation, but have respect only to the administration of the trust by the trustees, and when properly invoked, courts of equity have inherently the power to compel the trust to be properly and rightfully administered by the trustees. * * *

"Under the statute laws and judicial polity of this State, courts are without power or authority to administer charitable uses of an indefinite nature either as to objects or beneficiaries such as we have in the case of the sanitarium association, hence the donation in that case would have failed as a trust for charitable uses but for the act under which the sanitarium is incorporated, the courts being without jurisdiction in this State to uphold or enforce such an indefinite charitable trust as was created by the donors in the instrument of gift. * * *

"The donation upon which the incorporation of the sanitarium association is founded is a gift to charitable uses of a purely public character. The legislature in its capacity as the representative of the sovereign power of the State, by statute authorized its administration by a quasi-public instrumentality, and the courts have power

and authority only to see that the trust thus created and the mode and manner of its administration is faithfully and properly exercised by those appointed to do the work.

"The incorporation of the sanitarium association constitutes a contract between the State and the donors, reserving the right in the legislature alone to provide, if it should deem more expedient for the public interests, some other and different agency for administering the charitable use, for while it may be the method of administering the charity can not become a vested right in the association, the property donated and all property afterwards acquired is vested in the State through the agency of the sanitarium association, as a perpetual charitable use over which the courts have no control except to require the trustees to faithfully discharge their duties under the trust created by authority of the legislature."

1. Has equity alone jurisdiction to deal with the case stated in the information? It goes without saying that the demurrer admits the truth of the averments that are well pleaded. The statute provides in this State when the remedy by quo warranto may be invoked. The provisions are contained in section 9950, 3 Comp. Laws, and succeeding sections. It will not be necessary to quote them here as a reference to them is so easily made, and will show what they are. A reading of the averments of the information brings the case within the provisions of the statute authorizing the filing of an information in the nature of quo warranto.

But it is said the writ ought not to be allowed because an ample and adequate remedy is found in equity by virtue of 3 Comp. Laws, § 9755 et seq. It is doubtless true that a remedy through the equity court may be available, but it does not follow that for that reason the remedy by quo warranto must fail. Both remedies are provided by the statute. In the case of *Attorney General, ex rel. Wolverine Fish Co.*, v. *A. Booth & Co.*, 143 Mich. 89, a like question was under consideration. Justice HOOKER, speaking for the court, said:

"Is quo warranto a proper remedy? We have no doubt that a bill in equity would lie to restrain the unlaw-

ful acts of the corporation, done in furtherance of the purposes for which it is alleged to have been organized.   See *U. S.* v. *Joint Traffic Ass'n,* 171 U. S. 567; *Northern Securities' Co.* v. *U. S.,* 193 U. S. 197.   But proceedings in the nature of quo warranto are appropriate to try the right of a domestic corporation to act as such, and there would seem to be a close analogy between such a case and one where the proceeding is resorted to for the purpose of inquiry into the right of a foreign corporation to do business in another State than that of its organization, as it would be in the home State if the object was to inquire into a right to exercise franchises in excess of those granted.   The following authorities indicate this, and some of them relate to questions arising under statutes similar to ours:   *People* v. *Improvement Co.,* 103 Ill. 491; *People* v. *City of Peoria,* 166 Ill. 517; *State* v. *Electric Co.,* 28 Wash. 490; *State* v. *Somerby,* 42 Minn. 55; *State* v. *Insurance Co.,* 39 Minn. 538; *State* v. *Water Co.,* 107 Wis. 442; *State* v. *American Book Co.,* 65 Kan. 847; *State* v. *Insurance Co.,* 47 Ohio St. 167 (8 L. R. A. 129); *State* v. *Insurance Co.,* 49 Ohio St. 441 (16 L. R. A. 611); *State* v. *Railroad Co.,* 116 Wis. 152; *People* v. *Refining Co.,* 121 N. Y. 585 (9 L. R. A. 33); *People* v. *Milk Exchange,* 145 N. Y. 267 (27 L. R. A. 437); *State* v. *Distilling Co.,* 29 Neb. 700; *People* v. *Trust Co.,* 130 Ill. 268 (8 L. R. A. 497); *Distilling, etc., Co.* v. *People,* 156 Ill. 448."

The many authorities cited by him are in point.

There would be great force in the contention that equity alone has jurisdiction in this case if the only remedy which could be given in these proceedings is to take away respondent's charter, and to deprive it of all capacity whatever to administer the trust reposed in it.   For we do not decide that the case made by the information warrants that relief.   Other relief may however be given in this quo warranto proceeding.   The case made by the information shows that respondent is exercising a franchise or a privilege not conferred upon it by law.   This it has no right to do and this it may be prevented from doing by a proper order made in this case without depriving it of authority to carry on its legitimate business.   Section 9950, subd. 5, 3 Comp. Laws, authorizes the filing of "An

information in the nature of a quo warranto * * * against any corporate body * * * whenever it shall exercise any franchise or privilege not conferred upon it by law."

2. The other question presented by counsel, that is, what would become of the property in case of an adjudication of ouster, is fraught with great difficulty. It is insisted the donation would be lost to the people who are to be benefited thereby. If the proceeding was in equity the case also would be attended with great difficulty. If the case stated in the information is true it would be necessary for the court in either method of procedure to take control of the property until such a decree should be made as should do justice.

It is said the case is practically decided by the opinion of this court in *Michigan Sanitarium & Benevolent Ass'n* v. *City of Battle Creek*, 138 Mich. 676, in favor of respondent. That opinion was based upon the case as then made which was a very different case from the one before us. The case stated in the information and admitted by the demurrer makes it necessary, if a defense is to be interposed at all, for the respondent to make answer. This it will be allowed to do within a reasonable time.

The order of the court below is affirmed, with costs.

Grant, C. J., and Hooker, Carpenter, and McAlvay, JJ., concurred.