ATTORNEY GENERAL v. CONTRACT
PURCHASE CORPORATION.

1. AUTOMOBILES—INSTALMENT SALES CONTRACT—STATUTES.
    Finance company which processed assignment of chattel mort-
    gage and note and sent to automobile buyer a notice of as-
    signment, including a complete breakdown of transaction,
    showing cash price, down payment, unpaid cash balance, in-
    surance premium, finance charge and time balance together
    with copy of insurance policy, followed procedure complying
    with motor vehicle instalment sales contract statute (CL 1948,
    §§ 566.301, 566.302).

2. QUO WARRANTO—CORPORATIONS—USURPATION, ABUSE, MISUSE OR
    NONUSE OF POWERS.
    Quo warranto is an appropriate proceeding to remedy the usur-
    pation of corporate franchise and the abuse, misuse or nonuse
    of franchises or powers by an existing corporation (CL 1948,
    § 638.13).

3. SAME—FINDINGS—EVIDENCE—CORPORATIONS—OUSTER—FINES.
    A finding that the violations, charged by the attorney general
    in an information in the nature of quo warranto, are estab-
    lished by the evidence may result in rendition of a judgment
    ousting and altogether excluding the corporation against which
    the information is filed fr..m its corporate rights, privileges
    and franchises; imposition of a fine; or the ouster from doing
    particular acts (CL 1948, §§ 638.13, 638.21).

4. USURY—STATUTES.
    The usury statute includes interest not only on the loan of money
    or the extention of pre-existing debts, but also on all con-
    tracts and assurances (CL 1948, § 438.51).

5. SAME—DISCOUNTS.
    In the absence of a statute limiting the rate of discount on
    notes and commercial paper, a bona fide sale of such paper

REFERENCES FOR POINTS IN HEADNOTES

[2] 44 Am Jur, Quo Warranto, § 40 et seq.
[3] 44 Am Jur, Quo Warranto, § 117 et seq.
[5, 8–10] 55 Am Jur, Usury, § 26.
[5, 8–10] Usury as predicable upon transaction in form a sale or
    exchange of commercial paper or other choses in action. 165
    ALR 626.
[7] 55 Am Jur, Usury, § 30.
[11] 55 Am Jur, Usury, § 85.
[14] 14 Am Jur, Costs, § 91.

is not deemed usurious no matter how high the discount nor how low the price paid.

6. SAME—QUO WARRANTO—CONSTITUTIONAL LAW.

The Supreme Court leaves the necessary regulative measures to the legislature when the matter of making policy determinations respecting usury is presented on quo warranto, adhering to rules of law previously expressed by it.

7. SAME—CREDIT SALES.

The seller may charge a greater price for goods bought on credit than for cash without rendering the transaction usurious, unless the sale and purchase of the property is a mere pretense.

8. BILLS AND NOTES—DISCOUNT—CORPORATIONS.

A corporation, engaged in the discounting of automobile paper, which purchases such paper, has the right to enforce obligations thereunder in accordance with the tenor of the paper.

9. USURY—DISCOUNT—CORPORATIONS—SOLICITATION OF BUSINESS.

The mere fact that a corporation purchased a note at a discount beyond the legal rate of interest does not constitute the transaction a usurious one and solicitation of such business from automobile dealers and furnishing schedules for that purpose and blank forms would not affect a transaction involving the bona fide sale of an automobile, valid when made.

10. SAME—EVIDENCE—CORPORATIONS—AUTOMOBILE PAPER—DEALERS.

Usury is not shown where corporate purchaser of automobile instalment paper, after its purchase, handled the collections, repossessions and all other necessary acts in its own offices and through its own employees and except for an occasional indorsement of the paper and infrequent acquisition of repossessed vehicles in order to make good that obligation, in transactions not a part of the record in quo warranto proceedings to oust such purchaser from its corporate franchise, the dealer wholly withdrew from any further active participation in such paper (CL 1948, § 438.51).

11. QUO WARRANTO—CORPORATIONS—SMALL LOANS.

Violation of small loan act could not be used as basis for ouster from corporate franchise where transactions involved in information in nature of quo warranto were not found to be loans (CL 1948, § 493.1 *et seq.*).

12. SAME—CORPORATIONS—INSURANCE.

Violation of insurance code by procuring a policy for the automobile purchaser and making out a part of the policy, though

not a licensed agent, was not effected by defendant corporation so as to form basis of ouster from corporate franchise where it appears purchaser of the automobile is shown to have authorized the seller to obtain the policy, that the policy was obtained by defendant from an agency in which it had no interest, after defendant purchased the seller's interest in the automobile paper, and made a hectographic copy of the policy received from the agency and mailed it to the automobile purchaser without any compensation or commission for so doing, being reimbursed for payment of premium through payment of the instalments but not itself writing the policy (CL 1929, § 12341, as amended by PA 1931, No 163, and PA 1945, No 223).

13. AUTOMOBILES—INSURANCE—STATUTES—LICENSES.

The statute regulating instalment sales of motor vehicles which permitted the retail seller or his successor in interest to provide insurance for the vehicle buyer if latter did not desire to obtain his own insurance did not intend that dealers would have to acquire an insurance agent's license before procuring policies protecting their insurable interest but merely regulated the practice so as to permit the buyer to provide his own insurance if he so wished (CL 1948, § 566.301 et seq.).

14. COSTS—PUBLIC QUESTION—QUO WARRANTO—CORPORATIONS— STATUTES—DISCOUNT OF AUTOMOBILE PAPER.

No costs are allowed in quo warranto proceedings against corporation to determine propriety of its activities in connection with discount of automobile paper, a public question being involved (CL 1929, § 12341, as amended by PA 1931, No 163, and PA 1945, No 223; CL 1948, § 438.51 et seq.; § 493.1 et seq.).

Eugene F. Black, Attorney General in and for the State of Michigan, filed information in nature of quo warranto to oust Contract Purchase Corporation, a Michigan corporation, from corporate franchise. Submitted February 23, 1950. (Docket No. 77, Calendar No. 44,095.) Writ denied May 18, 1950.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for plaintiff.

*Dye & Anderson,* for defendant.

Butzel, J.   Pursuant to leave granted, plaintiff, attorney general of the State of Michigan, brought an original proceeding in the nature of quo warranto against the Contract Purchase Corporation, a Michigan corporation.   Plaintiff charged violations of the usury law,* the small loan act,† and the insurance code.‡   Testimony was taken by deposition.   Plaintiff asks that the defendant be ousted from its corporate franchise and enjoined from continuing its illegal practices.

Defendant, incorporated in 1933, has offices in several cities in Michigan.   It engages in many fields of financial activity, including the discounting of automobile paper; it owns 2 subsidiary small loan corporations and all the capital stock of the Merchants Bank of Detroit, a chartered industrial bank.

The particular acts complained of involve the discounting of automobile paper given in 1946 and 1947 for the purchase at retail of, respectively, a 1935 Ford dump truck and one 1937 and two 1939 passenger cars.   The transactions were with different dealers, but of a similar pattern and apparently typify many others.   A potential purchaser of a used vehicle would enter into negotiations with a used-car

---

* PA 1891, No 156, as amended (CL 1948, § 438.51 *et seq.* [Stat Ann § 19.11 *et seq.*]).

† PA 1939, No 21, as amended (CL 1948, §§ 493.1, 493.13 and 493.18 [Stat Ann 1943 Rev §§ 23.667(1), 23.667(13) and 23.667(18); Stat Ann 1949 Cum Supp §§ 23.667(1), 23.667(13) and 23.667(18)]).

‡ PA 1917, No 256, pt 2, ch 3, §§ 3 and 5, as amended by PA 1931, No 163, and PA 1945, No 223. See CL 1948, §§ 513.3 and 513.5 (Stat Ann 1949 Cum Supp §§ 24.133 and 24.135), for the statute in its present form which is virtually the same except for a subsequent minor amendment effected by PA 1947, No 66.

dealer and a cash price would be reached. If, however, the customer desired to buy by paying partly in cash and the balance on the instalment plan, the dealer would consult a rate chart and inform the customer of the amount of the instalment payments required on the unpaid "time balance." If the customer agreed to the credit price thus determined, the dealer would inquire of the finance company whether it would be willing to discount the contract of that particular prospective purchaser. A rapid check of the latter's credit would be made and within a short time the dealer would be notified of defendant's answer.

The various finance companies, including defendant, made a practice of giving rate charts and the blank forms used in instalment sales to the used-car dealers. The rate charts, based on the year of manufacture, showed the discount on instalment contracts for automobiles and the amount of payments. The discount was larger on the instalment contracts for older vehicles as experience showed that the older the automobile was, the greater would be the risk of loss incurred. This discount, called the "finance charge" was included in the "time balance" of the credit purchase of the automobile in each transaction. If the purchaser expressed no other preference as to coverage or agency, the vehicle was insured for him against fire and theft only, or collision damage in addition if it was a relatively new model, and the premium was added to the "finance charge."

The purchaser executed a chattel mortgage and note in the amount of the "time balance" to the dealer on the forms provided by the finance company with which the dealer expected to discount the paper (defendant in these instances). The chattel mortgage contained a breakdown of the transaction with the exception that the "insurance and finance charge" was listed together as one item so-named. The form

also showed the number and amount of the equal monthly payments to be made. The sum of these payments equalled the unpaid balance of the "time price."

After the purchaser signed the mortgage and note, the dealer would assign the mortgage contract and indorse the note, with or without recourse, place the papers in a sealed envelope and fill out a draft drawn on the finance company in the amount of the note minus the finance charge and the insurance premium. These papers would be deposited with the dealer's bank, and upon their acceptance by the defendant, the amount of the draft would be credited to the dealer's bank account. At the same time defendant would credit the dealer with a rebate, called a "dealer's reserve," on its own books. The dealer could draw this latter amount at any time he wished, if he were not indebted to the defendant.

The defendant had no commitment to purchase all the paper offered by the dealer, nor was the dealer obligated to discount all his paper through any particular finance company. If he did not wish to discount the paper, there was nothing to prevent him from carrying it himself.

Defendant would process the transaction through its various departments and set up the necessary files. A notice of assignment, including a complete breakdown of the transaction showing the cash price, down payment, unpaid cash balance, insurance premium, finance charge and time balance, would then be sent to the customer with a coupon booklet showing dates of payments and the office of defendant at which they were to be made. Defendant's insurance department would mail a copy of the insurance policy to the customer.

Defendant's procedure, including the terminology used in detailing the various items in the breakdown, was in compliance with the provisions of the motor

vehicle instalment sales contract statute, CL 1948, §§ 566.301, 566.302 (Stat Ann 1949 Cum Supp §§ 19.-415[1], 19.415[2]).

Quo warranto is an appropriate proceeding to remedy the usurpation of corporate franchises and the abuse, misuse or nonuse of franchises or powers by an existing corporation. CL 1948, § 638.13 (Stat Ann § 27.2327); *People, ex rel. Maybury,* v. *Mutual Gas-Light Co. of Detroit,* 38 Mich 154; *Attorney General, ex rel. Miner,* v. *Lorman,* 59 Mich 157 (60 Am Rep 287); *Attorney General, ex rel. Wolverine Fish Co.,* v. *A. Booth & Co.,* 143 Mich 89; *People, ex rel. Attorney General,* v. *Michigan Sanitarium & Benevolent Association,* 151 Mich 452; *Attorney General, ex rel. James,* v. *National Cash Register Co.,* 182 Mich 99 (Ann Cas 1916D 638); *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co.,* 246 Mich 198 (PUR1929B 455, PUR1929E 27); *Attorney General* v. *Marital Endowment Corp.,* 257 Mich 691. A finding that the violations charged are established by the evidence may result in rendition of a judgment ousting and altogether excluding the corporation from its corporate rights, privileges and franchise; or in lieu thereof, this Court may impose a fine not exceeding $10,000 (CL 1948, § 638.21 [Stat Ann § 27.2335]); or the ouster, instead of being general, may be from doing particular acts. *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co., supra.* We must determine whether the testimony establishes offenses against the laws and policy of this State.

Petitioner contends that inasmuch as the discount, which was equal in amount to the finance charge on the instalment purchase contracts and notes, was far in excess of the allowable rate of interest in this State, that the defendant thus received a usurious amount. Our usury statute (CL 1948, § 438.51 *et seq.* [Stat Ann § 19.11 *et seq.*]) is broader in scope

than that in many jurisdictions and includes *interest* not only on the loan of money or the extension of pre-existing debts, but also on all contracts and assurances. *Continental National Bank* v. *Fleming,* 170 Mich 624, and the authorities there cited. However, in the absence of a statute limiting the rate of discount on notes and commercial paper, a bona fide sale of such paper is not deemed usurious no matter how high the discount nor how low the price paid. *Webster* v. *Sterling Finance Co.,* 355 Mo 193 (195 SW2d 509). Our attention has not been called to the existence of a statute regulating the discount rate.

Were the original instalment sales of the vehicles by the dealers in contravention of our statute limiting interest rates? Even though we are impressed by policy considerations, we are constrained to adhere to the rules of law previously expressed by this Court, and leave the necessary regulative measures to the legislature.*

Unless the sale and purchase of property is a mere pretense, the seller may charge a greater price for goods bought on credit than for cash without rendering the transaction usurious. *Hartwick Lumber Co.* v. *Perlman,* 245 Mich 3; *Keefe* v. *Bush & Lane Piano Co.,* 247 Mich 82.

"Exacting a credit price for an automobile in excess of the legal interest on the cash price is not usurious." *General Motors Acceptance Corp.* v. *Swain* (La Ct of App), 176 So 636.

The sales of the vehicles were unquestionably consummated and were the actual basis of the dealings. They were not fictitious creations serving as camouflage. Defendant, through purchase of the com-

---

*A bill is now pending before the legislature (special session, 1950) to regulate the financing of contracts or mortgages for purchase of automobiles.

mercial paper, had the right to enforce the obligations in accordance with their tenor and its refusal to appreciably reduce them upon payment in full before due date was in pursuance of that right.

Petitioner contends that defendant was not actually a mere purchaser of the paper as it furnished rate charts, blank forms and credit information, asserted willingness to discount the obligations before the transaction transpired and gave the dealer a rebate. He further asserts that the negotiation of some of this paper with recourse is additional indicia that loans were contemplated. Similar questions have been raised elsewhere. In *General Motors Acceptance Corp.* v. *Swain, supra,* defendant also raised questions of violation of the small loan act. In *Commercial Credit Co.* v. *Tarwater,* 215 Ala 123 (110 So 39, 48 ALR 1437), the court said:

"The mere fact that plaintiff purchased the note at a discount beyond the legal rate of interest does not constitute the transaction an usurious one.

"The original transaction being entirely valid, it is immaterial that plaintiff solicited this character of business from the automobile dealers and furnished schedules for that purpose and blank forms."

And in *General Motors Acceptance Corp.* v. *Weinrich,* 218 Mo App 68 (262 SW 425), it was said:

"The mere fact that prior to the transaction, plaintiff furnished Reuter with blank forms of chattel mortgages and notes together with rates of discount it would pay, and also forms of statements relative to the sale and solvency of the purchaser and directions how to proceed, certainly does not conclusively show that the transaction was a scheme to enable plaintiff to effect a usurious loan to defendant. * * * The furnishing of the above-mentioned blanks, rates and information could very properly be done merely to facilitate the submission of notes to plaintiff together with the required information relative to the

desirability of the same, and thereby expedite the purchase by plaintiff of automobile paper taken by Reuter whenever he made a sale. \* \* \*

"It is urged, however, that the terms of the indorsement are such as not only make Reuter guarantee the note but also rendered him equally liable with the maker, and, therefore, the assignment was not a bona fide sale, but was a loan upon the collateral security of the evidence of debt. This ignores the unquestioned facts that there was a bona fide sale of the automobile out of which the note grew, and makes the question at issue depend \* \* \* upon the good faith of the sale of the note by Reuter to plaintiff."

The facts in the instant case are much stronger evidence of a bona fide sale of the paper than either of the *General Motors Acceptance Corporation Cases* above cited, and are readily distinguishable from the subterfuge in *Abeloff* v. *Ohio Finance Co.*, 313 Mich 568. Once the defendant discounted the obligations, the dealer wholly withdrew from any further active participation in the transaction. Defendant handled the collections, repossessions and all other necessary acts in its own offices and through its own employees. The dealers' occasional liability as an indorser, or their infrequent acquisition of repossessed vehicles in order to make good that obligation, in transactions not a part of the record before us does not alter the distinctive character of the business as bona fide sales of commercial paper. Therefore, we find that the evidence fails to sustain the charge of usury.

For a collection of authorities on the various aspects of similar transactions, the weight of which is substantially in accord with our holding, see the annotations in 165 ALR 627, 143 ALR 238, and 57 ALR 880, 48 ALR 1442.

There could be no violation of the small loan act (CL 1948, § 493.1 *et seq.* [Stat Ann 1943 Rev and

Stat Ann 1949 Cum Supp § 23.667(1) *et seq.*]) inasmuch as we have found no loans were involved in the activities upon which this complaint is based.

Plaintiff further contends that defendant has violated the insurance code, particularly CL 1929, § 12341, as amended by PA 1931, No 163, and PA 1945, No 223 (which is virtually identical to CL 1948, § 513.5 [Stat Ann § 24.135], although a subsequent minor amendment was effected by PA 1947, No 66) by procuring a policy for the vehicle purchaser and making out a part of that policy, though not a licensed agent. The record shows that the purchaser authorized the seller to obtain the policy and that this was done by defendant upon purchasing the seller's interest in the commercial paper.

The defendant sent a sheet for each individual transaction to a local insurance agency. The agency entered the amount of the premium and the carrier's name and policy number on the sheet, and sent it and the policy to the defendant. Thereafter defendant's insurance department made a hectographic copy of the policy and mailed it to the purchaser. Defendant received no compensation or commission for placing the insurance and had no interest in the agency. Defendant did not itself write the policies. It paid the premium and was reimbursed through the payment of the automobile instalments.

The evidence fails to sustain any violation of the insurance code in the procedure related. The section of the code involved was enacted in 1917 and since the 1931 amendment the substance remains unchanged insofar as the questions before us are involved though there have been subsequent amendments. In 1939, the legislature enacted the motor vehicle retail instalment sales statute, CL 1948, § 566.301 *et seq.* (Stat Ann 1949 Cum Supp § 19.415 [1] *et seq.*), in which it was expressly provided that the retail seller or his successor in interest might

provide insurance for the vehicle buyer if the purchaser did not desire to obtain his own insurance. The legislature obviously did not intend that all new and used-automobile dealers who sold on the instalment plan would have to acquire an insurance agent's license before they could procure the policies by which their insurable interest in the vehicle would be protected. The statute expressly authorized the acts here done, merely regulating the practice in order to permit the buyer to provide his own insurance if he so wished.

The writ is dismissed, without costs, as a public question is involved.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.