CHIPPY'S AUTO MART, INC., A NEW JERSEY CORPORA-
TION AND EUGENE RICCIO, TRADING AS GENE RICCIO
MOTORS, PLAINTIFFS-APPELLANTS, v. CHARLES R.
HOWELL, COMMISSIONER OF BANKING AND INSUR-
ANCE, AND ARTHUR J. SILLS, ATTORNEY GENERAL
OF THE STATE OF NEW JERSEY, DEFENDANTS-RE-
SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 15, 1965—Decided April 15, 1965.

Before Judges GAULKIN, FOLEY and COLLESTER.

*Mr. Grover C. Richman, Jr.* argued the cause for plaintiffs (*Messrs. Richman, Berry & Ferren,* attorneys).

*Mr. Avrom J. Gold,* Deputy Attorney General, argued the cause for defendants (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

GAULKIN, S. J. A. D.  Plaintiffs are licensed by the Division of Motor Vehicles as motor vehicle dealers, under the Motor Vehicle Act, and by defendant Commissioner of Banking and Insurance (Commissioner) as motor vehicle installment sellers, under *N. J. S. A.* 17:16C–1 *et seq.* The Commissioner takes the position that plaintiffs must also obtain an insurance agent's or broker's license, pursuant to *N. J. S. A.* 17:17–12, and threatens prosecution if they fail to comply.  Plaintiffs seek a declaratory judgment that their operations do not require them to be so licensed.

Plaintiffs say they operate as follows and, for the purposes of this case, the State does not deny it. The buyer of a motor vehicle who does not pay cash executes a conditional sales contract or other purchase money lien on the vehicle to plaintiffs. Plaintiffs require insurance on the vehicle against risk of physical damage to it, to protect the lien. The buyer is permitted to choose the insurance company and to purchase the policy. If he is unable or unwilling to do so, and authorizes plaintiffs to obtain it, plaintiffs order a policy from an agency or company of their own choice, covering the buyer and themselves (or their assignees) as their respective interests may appear. Plaintiffs pay the premium in full to the company and receive no commission, compensation or reward for obtaining the insurance.

The Commissioner's contention is set forth in his brief as follows:

"There is, of course, no question that single interest physical damage insurance may be purchased by a security holder to cover his own interest without the necessity of licensing; but the Commissioner strongly urges that the mere purchase of insurance by the security holder on behalf of the vendee to cover the vendee's interest in and of itself constitutes soliciting, negotiating or effecting insurance within the meaning of the statute. * * * The mere act of calling an insurance agent or broker and telling that person to obtain or write a policy naming the vendee as an insured according to his interest would constitute effecting insurance."

The statute upon which the Commissioner relies is *N. J. S. A.* 17:17–12, which provides:

"No person * * * shall solicit, negotiate or effect any contract of insurance of any kind * * * or sign, deliver or transmit, * * * any policy, * * * or receive any premium, commission, fee or other payment thereon, or maintain or operate any office in this State for the transaction of the business of insurance, or in any manner, directly or indirectly, transact the business of insurance of any kind whatsoever, within this State, unless specifically authorized under the laws of this State. * * *."

*N. J. S. A.* 17:22–6 *et seq.* provides for the licensing of insurance agents, brokers and solicitors. *N. J. S. A.* 17:22–

6.20 forbids unlicensed persons to "solicit, negotiate or effect" contracts of insurance, and *N. J. S. A.* 17:22–6.18 forbids all insurance companies and licensees to "pay any money or commission or brokerage or give or allow any valuable consideration" to those not licensed "for or because of service rendered or performed * * * in negotiating or effecting * * * a contract of insurance * * *."

We hold that the above-mentioned statutes do not require plaintiffs to obtain an insurance license to carry on their above-described activities.

The Commissioner concedes that an automobile dealer needs no license to obtain insurance covering his own interest. That being so, we do not understand why the dealer's ordering the policy written to cover the interest of the buyer as well should constitute soliciting, negotiating or effecting insurance within the meaning of said statutes. When the dealer obtains a policy to cover his own interest, or the interest of the buyer as well, he orders it after consultation with the buyer and upon the buyer's promise to pay for it. There is as much solicitation and negotiation in one case as in the other, and insurance is effected in both cases.

What plaintiffs do is expressly authorized by the Retail Installment Sales Act, *N. J. S. A.* 17:16C–1 *et seq.* Section 30 of that act provides:

"The retail buyer may be required to insure the goods at the retail buyer's expense for the protection of the retail seller or subsequent holder which insurance may be purchased by the holder. Such insurance shall be written for the dual protection of the retail buyer and the retail seller or subsequent holder to the extent of his interest in the goods and shall be limited to insurance against substantial risk of damage, destruction, or theft of such goods and shall be upon terms and conditions, which are reasonable and appropriate, considering the type and conditions of such goods. When the retail buyer fails or is unable to acquire insurance or the retail seller or subsequent holder is unable to purchase insurance covering the dual protection of the retail buyer and retail seller or subsequent holder, the retail seller or holder may purchase a single interest insurance policy on the goods and may collect the premium therefor from the retail buyer."

This section plainly contemplates the purchase by the dealer of a single policy covering the buyer as well as the dealer. Indeed, the dealer may buy a policy covering his interest alone only when he "is unable to purchase insurance covering the dual protection of the retail buyer and the retail seller." This provision was obviously intended to save the buyer the expense of two policies and two premiums. If the Commissioner's present position were sustained, the dealer could not stay in business without an insurance license, for it is a rare case in which a dual policy cannot be obtained, and most buyers on time want their insurance premium financed together with the car purchase price. On the other hand, if separate policies could be purchased without violating section 30, the buyer would have to pay two premiums or go without the benefit of fire, theft and collision insurance and remain liable to the insurance company, via subrogation, if the company paid such a loss to the dealer.

Section 31 of the same act provides that:

"The retail buyer shall have the privilege of supplying insurance on the goods through an agent or broker of his own selection and selecting an insurance company acceptable to the retail seller; provided, however, the inclusion of the premium for such insurance in the retail installment contract, when the retail buyer selects the company, agent or broker, shall be optional with the retail seller. The amount, if any, included for such insurance shall not exceed the premiums chargeable in accordance with the applicable rates filed with the commissioner for such insurance. The retail seller or holder, if the premium for dual insurance on the goods is included in a retail installment contract, shall within 25 days after the execution of the retail installment contract send or cause to be sent to the retail buyer a policy or policies or certificate of insurance, written by an insurance company authorized to do business in this State, clearly setting forth the amount of the premium, the kind or kinds of insurance and the scope of the coverage and all the terms, exceptions, limitations, restrictions and conditions of the contract or contracts of insurance, * * * ."

Section 32 requires that a motor vehicle installment sales contract which provides only for insurance for damage to the vehicle shall contain a warning "in 10-point type or larger"

that the policy will not cover liability for bodily injury or property damage, and that without such insurance the buyer's license and registration may be revoked if he has an accident.

The Commissioner contends that no matter how the dealer arranges for dual insurance—even if he does no more than ask the buyer whether he will obtain it himself, and quotes the premium—it necessarily involves soliciting, negotiating or effecting insurance and he must have an insurance license. The Commissioner contends that the dealer cannot quote rates, or perform those duties which sections 30 and 31 place upon him when he does procure dual insurance, with safety to the buyer and to the public, unless he knows something about insurance. That is why, says the Commissioner, he has provided for a special limited license for motor vehicle dealers, which they can obtain after taking certain courses which he has prescribed; and he insists he has the authority to do so.

The Commissioner does not explain why he does not require licenses from installment dealers in other types of property, or from mortgagees of realty who customarily require and obtain dual insurance. Even though we agree that it is desirable that all people know more about insurance, upon which our economy relies so heavily, we do not agree that plaintiffs' described activities fall within the intendment of the statute or that the Commissioner has the right to require them to be licensed to carry them on.

The Supreme Court of Michigan was faced with the same question, based on similar statutes, in *Black v. Contract Purchase Corp.*, 327 *Mich.* 636, 42 *N. W.* 2d 768, 774 (*Sup. Ct.* 1950), and held:

"* * * The legislature obviously did not intend that all new and used automobile dealers who sold on the installment plan would have to acquire an insurance agent's license before they could procure the policies by which their insurable interest in the vehicle would be protected. The statute expressly authorized the acts here done, merely regulating the practice in order to permit the buyer to provide his own insurance if he so wished."

■ This is not to say that no automobile dealer can be required to obtain an insurance license. The activities of a particular dealer might be of such a nature that they would constitute soliciting, negotiating or effecting insurance within the purview of the statute. A clear example of this would be if the dealer received money or any valuable consideration for placing the insurance. We note that *N. J. S. A.* 17:16C–33 provides that "In addition to insurance on the goods, by agreement with the retail buyer, the retail seller may purchase such other insurance and other benefits as the retail buyer shall contract for * * *." "Solicit" has been defined as "to ask earnestly; to make petition; to appeal to (for something); to endeavor to obtain by asking or pleading; to plead for." *Briody v. DeKimpe*, 91 *N. J. L.* 206, 208 (*E. & A.* 1917). If the dealer were to "ask earnestly; to make petition" to a car buyer to buy life, health or similar insurance, an insurance license might be required. In short, the Retail Installment Sales Act does not exempt dealers from the necessity of obtaining an insurance license under any and all circumstances. The activities of a dealer may make him a solicitor, broker or agent. If they do, he must be licensed.

■ The Commissioner argues that some dealers are misquoting premiums, misrepresenting coverage, and otherwise misleading the public. If that be so, their licenses as motor vehicle installment sellers may be revoked by the Commissioner, and their licenses as motor vehicle dealers may be revoked by the Director of Motor Vehicles. An insurance license will not make the deceitful honest. The courses required may make them more knowledgeable and perhaps less prone to give out misinformation, but the requirements of sections 27(d), 31, 32 and 50 of the Retail Installment Sales Act, if carried out, would seem to give the buyer accurate knowledge of his premium and coverage; and the Commissioner already has ample authority to enforce those requirements.

Plaintiffs may submit an appropriate judgment.